In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2788

JOSEPH J. WAYMIRE,

Plaintiff-Appellant,

v.

NORFOLK AND WESTERN RAILWAY
COMPANY,

Defendant-Appellee.


Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 97 C 1914--John D. Tinder, Judge.


Argued February 18, 2000--Decided July 14, 2000


    Before Posner, Chief Judge and Bauer and Manion,
Circuit Judges.

    Bauer, Circuit Judge.  Joseph Waymire, a
conductor for the defendant Norfolk and Western
Railway Company ("N&W"), sued his employer under
the Federal Employers' Liability Act ("FELA"), 45
U.S.C. sec.51 et seq., claiming that the post
traumatic stress he suffered after a train/truck
collision disabled him from continuing his
employment. The District Court found that
Waymire's FELA negligence claims were superseded
by the Federal Railroad Safety Act ("FRSA"), 49
U.S.C. sec.20101 et seq., and entered summary
judgment in favor of N&W. Waymire appeals. We
affirm.

I.  BACKGROUND

    On June 8, 1996, Waymire was the conductor on
an N&W train that collided with a truck stopped
on N&W's tracks at the McGalliard Road crossing
in Muncie, Indiana. Waymire was not physically
injured in the collision, but he claims that as
a result of the accident he developed post
traumatic stress syndrome and is completely
disabled from employment. The driver of the truck
suffered only scrapes and bruises.

    Waymire sued N&W under FELA, claiming that the
railroad company's negligence in allowing the

train to travel at an unsafe speed and in failing to install additional warning devices at the crossing caused or contributed to cause the accident./1 Just prior to the collision, the train was traveling 20 to 23 miles per hour, well below the 60 miles per hour speed limit set by FRSA and the regulations promulgated thereunder. Furthermore, at the time of the accident, the McGalliard Road crossing was equipped with federally funded, installed and approved warning devices, including cantilevered flashing warning signals that gave advance warning of an approaching train, pavement markings indicating the presence of railroad tracks, and a "DO NOT STOP ON TRACKS" sign that motorists had to pass before reaching the tracks.

Arguing that its compliance with FRSA precluded Waymire's negligence claims under FELA, N&W moved for summary judgment. The District Court considered the statutes and ruled that FRSA and regulations promulgated thereunder defeated plaintiff's allegations of unsafe train speed and inadequate warning devices in his FELA negligence action. We agree and affirm the District Court.

II.  DISCUSSION

We review the District Court's grant of summary judgment de novo, drawing all reasonable inferences in favor of the non-movant, Waymire. Williams v. National Railroad Passenger Corp., 161 F.3d 1059, 1061 (7th Cir. 1998). If we find there is no genuine issue of material fact and that N&W is entitled to judgment as a matter of law, we will affirm the District Court's judgment. Fed.R.Civ.P. 56. Here, there are no genuine issues of material fact and our inquiry focuses on the application of the law to the facts.

A.  Unsafe Speed Claim

In 1908, Congress enacted the Federal Employers' Liability Act, 45 U.S.C. sec.51, et seq., to provide a remedy to railroad employees injured as a result of their employers' negligence. Kossman v. Northeast Illinois Regional Commuter Railroad Corp., 211 F.3d 1031, 1035 (7th Cir. 2000). FELA imposes on railroads "a general duty to provide a safe workplace," McGinn v. Burlington Northern Railroad Company, 102 F.3d 295, 300 (7th Cir. 1996):

Every common carrier by railroad while engaging in commerce between any of the several States . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . . for such injury or

death resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier . . .

45 U.S.C. sec.51.

As a general negligence statute, FELA neither prohibits nor requires specific conduct by a railroad. By contrast, the Federal Railroad Safety Act of 1970, 49 U.S.C. sec.20101 et seq., proscribes railroad conduct by empowering the Secretary of Transportation to implement comprehensive and detailed railroad safety regulations. 49 U.S.C. sec.20103 ("The Secretary of Transportation, as necessary, shall prescribe regulations and issue orders for every area of railway safety."). The question with which we are presented is whether a railroad company can be liable in a FELA negligence action claiming unsafe speed and inadequate warning devices when the complained of conduct complies with the conduct mandated by FRSA and its regulations. We hold that it cannot.

The vast majority of courts examining lawsuits arising out of automobile/train collisions do so under state law./2 Thus, the courts employ a preemption analysis. We do not do so here, as we are instead faced with the interaction of two federal statutes. But, we find the opinion of the Supreme Court on the subject of the preemption of unsafe train speed claims to be instructive and so we discuss it here.

In CSX Transportation, Inc. v. Easterwood, 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993), the widow of a truck driver killed in a crossing collision sued the railroad under Georgia law alleging that the railroad operated its train at an excessive speed and failed to maintain adequate warning devices at the crossing. The Court found that plaintiff's excessive speed claim was barred by FRSA's preemption clause, which provides that states may regulate railroad safety "until the Secretary of Transportation prescribes a regulation or issues an order covering the subject matter of the State requirement." 49 U.S.C. sec.20106 (emphasis added). The Secretary of Transportation has promulgated regulations under FRSA setting maximum train speeds for certain classes of railroad tracks, 49 C.F.R. sec.213.9, and the defendant's train was traveling within that speed limit. Thus, Easterwood was not allowed to maintain her excessive speed claim.

In deciding whether the speed regulations "covered" the field, ensuring preemption, the Court noted that although they were written in terms of maximum speeds, the regulations were

more than just ceilings, an argument also advocated by the plaintiff here. If they were merely ceilings, there arguably would be room for railroad liability if the plaintiff could show that conditions favored lower speeds. The Supreme Court rejected that argument, saying that the preemption clause does not require an inspection of the regulation's motivation, and, even if it did, the structure of the regulations showed that they were adopted with safety in mind. Id. at 674.

We are persuaded by the Supreme Court's reasoning and find that in order to uphold FRSA's goal of uniformity we must strike the same result. See 49 U.S.C. sec.20106 ("Laws, regulations, and orders related to railroad safety shall be nationally uniform to the extent practicable."). In Easterwood, the train was operating within the FRSA prescribed 60 miles per hour speed limit, as was N&W's train in this case. It would thus seem absurd to reach a contrary conclusion in this case when the operation of both trains was identical and when the Supreme Court has already found that the conduct is not culpable negligence.

We are not alone in our conclusion. Of the other courts who have been presented with the issue as it relates to FELA and FRSA, two have held that the FELA plaintiff's unsafe speed claim cannot stand in light of the Secretary's adoption of the speed regulations in 49 C.F.R. sec.213. See Rice v. Cincinnati, New Orleans & Pacific Railway Company, 955 F. Supp. 739, 740-41 (E.D. Ky. 1997) and Thirkill v. J.B. Hunt Transport, Inc., 950 F. Supp. 1105, 1107 (N.D. Ala. 1996). Only one other court has reached the opposite result. See Earwood v. Norfolk Southern Railway Company, 845 F. Supp. 880 (N.D. Ga. 1993). We believe the former result to be the correct result in light of FRSA's goal of uniformity and the Supreme Court's holding in Easterwood and thus hold that Waymire's negligence claim based upon the speed of the train is superseded by FRSA and the regulations promulgated thereunder. The judgment of the District Court is affirmed in this regard.

B.  Inadequate Warning Devices

We find that similar reasoning causes us to reject Waymire's FELA claim that N&W negligently failed to install additional warning devices at its crossing. The Secretary of Transportation has addressed crossing safety through a series of regulations and, for projects using federal funds, mandates that crossings involving multiple tracks, high speed trains operating in areas of

limited visibility, or having heavy vehicle or train traffic employ automatic gates with flashing signals. 23 C.F.R. sec.646.214(b)(3). A "diagnostic team" made up of representatives of the interested parties can also recommend automatic gates and flashing signals be installed. Id. See also 23 C.F.R. sec.646.204(g). For crossings not meeting these conditions, the Secretary of Transportation requires that the type of warning device be approved by the Federal Highway Administration ("FHWA").

The Easterwood court found that these regulations cover the subject matter of warning devices at grade crossings and displace state law. 507 U.S. at 670-71. We agreed in Thiele v. Norfolk & Western Railway Company and held that sec.sec.646.214(b)(3) and (4) preempt state law adequacy of warning claims when federal funds are used to install the warning devices and when those devices are installed and fully functioning. 68 F.3d 179, 184-85 (7th Cir. 1995).

Here, the parties do not dispute that the crossing's warning devices were federally funded and approved by the FHWA and that they were functioning at the time of the collision. If this were a challenge under state law, then, Waymire's argument would be settled as a matter of law. To allow a plaintiff to argue adequacy of warning claims under FELA but not under state law would undermine the railroad safety uniformity intended by Congress and we decline to do this. We hold that FRSA supersedes Waymire's FELA action insofar as it alleges inadequate warning devices, as long as the devices were federally funded, operating, installed and approved in accordance with the regulations promulgated by the Secretary of Transportation under FRSA.

The Supreme Court recently reaffirmed that "[s]ections 646.214(b)(3) and (4) . . . establish a standard of adequacy that 'determine[s] the devices to be installed' when federal funds participate in the crossing improvement project." Norfolk Southern Railway Company v. Shanklin, ___ U.S. ___, ___ 120 S.Ct. 1467, 1474, 146 L.Ed.2d 374 (2000), quoting Easterwood, 507 U.S. at 671. In Shanklin, the crossing had a reflectorized sign but no gates or flashing lights. The widowed plaintiff argued that the sign, alone, was an inadequate warning device under Tennessee law. The Court found the claim preempted: "Once the FHWA approved the project and the signs were installed using federal funds, the federal standard for adequacy displaced Tennessee statutory and common law addressing the same subject, thereby pre-empting respondent's claim." Id. at 1476.

Relying on Shanklin, we conclude that the requirements in sections 646.214(b)(3) and (4) establish a standard of adequacy and determine the type of warning devices that must be installed at a federally funded crossing improvement project. Given that the federal agency empowered by Congress to establish uniform, comprehensive federal safety standards related to warning devices at grade crossings has promulgated such regulations, federal common law and statutes on these issues are necessarily displaced. Therefore, Waymire's FELA claim asserting inadequate warning devices at the crossing is superseded by FRSA and its regulations. The judgment of the District Court in this regard is affirmed.

III.  CONCLUSION

To treat cases brought under federal law differently from cases brought under state law would defeat FRSA's goal of uniformity. It would deny recovery to the motorist struck by the train, but not to the engineer operating the train. We do not believe that is the result envisioned by the statute or by the Supreme Court's decisions. To the extent that FELA, then, is inconsistent with FRSA on the issues of train speed and warning devices at grade crossings, we hold that FRSA supersedes FELA. Because N&W complied with FRSA and its regulations, we find that summary judgment was properly granted and affirm the decision of the District Court.

AFFIRMED.


/1 Waymire also sued the truck driver and the truck driver's employer, but those claims were settled and are not part of this appeal.

/2 These suits are filed by the injured private citizen, not the injured railroad employee.