**Vernon GRIMES, Plaintiff,**

v.

**NORFOLK SOUTHERN RAILWAY COMPANY, and**

**Douglas A. Drewery, Defendants.**

**No. 3:99CV0429 AS.**

United States District Court,
N.D. Indiana,
South Bend Division.

Sept. 18, 2000.

John C. Duffy, Layfayette, IN, for Norfolk.

Melanie M. Dunajeski, Julie R. Huble, Hammond, IN, for Douglas Drewery.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

This case is before the Court on Defendant Norfolk Southern Railway Company's Motion for Summary Judgment on Plaintiff's Count I, filed on February 29, 2000, and Defendant Douglas A. Drewery's Motion for Summary Judgment on Plaintiff's Count II, filed on June 1, 2000. The case involves three distinct claims arising out of the same set of facts surrounding a collision between a car driven by Douglas A. Drewery ("Drewery"), and a train owned and operated by Defendant Norfolk Southern Railway Co. ("NSRC"). The plaintiff, Vernon Grimes, was a conductor on Defendant Norfolk's freight train and was injured after the collision while performing a required post-accident inspection of the train. The Plaintiff filed a complaint against NSRC based on Title 45, U.S.C. § 51 et seq., commonly known as the Federal Employer's Liability Act ("FELA"). The Plaintiff filed a separate claim against Drewery under Indiana Common Law alleging that Drewery was negligent and caused the crossing collision when he inexplicably parked his car on the tracks. In addition, NSRC cross-claimed against Drewery for allegedly causing the accident in hopes of recovering the money it has already paid for the Plaintiff's medical bills.

Extensive oral argument was had in Lafayette, Indiana on September 1, 2000 and these able, highly experienced lawyers, with that experience in railroad law, were most helpful in delineating the issues. Discovery has been exhaustive and the record is massive. The Court has considered all the submissions of the parties and now rules as follows.

### I. JURISDICTION

Each of the claims before the Court must have a basis for jurisdiction. There is no question that as between NSRC and Drewery, this court has federal question jurisdiction under Title 28 U.S.C. § 1331 with regard to the claims under FELA, 45

U.S.C. § 56. Jurisdiction over the Plaintiff's Count II claim against Drewery is based on federal supplemental jurisdiction under 28 U.S.C. § 1367(a) as the claim arose out of a common nucleus of operative facts and is so related to the FELA claim as to be part of the same case or controversy. Joinder is appropriate under Fed. R.Civ.P. 20(a). Jurisdiction over NSRC's cross-claim is also premised on 28 U.S.C. § 1367(a), with joinder appropriate under Fed.R.Civ.P. Rule 13(g).

## II. RELEVANT FACTS

The Plaintiff, Grimes, was employed as a brakeman/conductor for the Defendant Railroad since 1967. (Grimes Dep. at 2–5.) On August 15, 1997, he was working as a conductor on NSRC Number 195L6 which was running from Fort Wayne, Indiana to Detroit, Michigan. (NSRC's Br. in Supp. at 2.) Early on the morning of August 15, 1997, at approximately 2:15 a.m., the crew became aware of a vehicle sitting on the tracks at the intersection of Parent Road and NSRC's mainline tracks northeast of New Haven, not far from Fort Wayne, Indiana. (Pl.'s Ans. to NRSC at 3.) Despite the sounding of the locomotive whistle, the car did not move off the tracks and was struck by the NSRC train. (Id.) Although efforts to stop the train began as soon as the car was spotted, the train did not come to complete halt until about ten railroad car lengths beyond the crossing. (Id.) Both the Plaintiff and the Defendant NSRC allege that the driver of the car, Drewery, was intoxicated at the time his car was parked on the railroad tracks, and that it had been there for some time, but Drewery denies these allegations.

Pursuant to company policy, Grimes and a student conductor, DeWayne DeHart, exited the train and began walking back towards the crossing to inspect the train for damage or derailed cars, and to provide whatever assistance possible to the motorist. (NSRC's Br. in Supp. at 2.) Grimes found himself in the position of having to find a safe place to walk along the edge of the railroad track while at the same time inspecting the train, with only the use of a railroad lantern to illuminate both his path and the train. (Pl.'s Ans. to NSRC at 4.) He couldn't walk on the area directly adjacent to the track because the grade was too steep and the large stones used in the ballast rolled under his feet. (Id.) Therefore, Grimes decided that the edge of the ballast, about ten to twelve feet from the ends of the ties, was the safest place to walk to conduct his inspection. (Id.) The footing in this area was still problematic as it contained a mixture of grass, weeds, dirt and stray ballast stones. (Id.) In addition, according to Grimes, it contained a hole about the size of a basketball that he accidentally stepped into as he was inspecting the train, resulting in his injuries. (Id.)

## III. STANDARD OF REVIEW

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R.CIV.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Bragg v. Navistar Int'l Trans. Corp.*, 164 F.3d 373 (7th Cir. 1998). *Celotex* addressed the initial burdens of the parties under Rule 56, and *Anderson* addressed the standards under which the record is to be analyzed within the structure of Rule 56.

The initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (*quoting* Fed.R.Civ.P. 56); *Larimer v. Dayton Hudson Corp.*, 137 F.3d 497 (7th Cir.1998). A question of material fact is a question which will be outcome determinative of an issue in the case. The Su-

preme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts shows that there is a genuine [material] issue for trial.' " *Id.* The nonmoving party cannot rest on its pleadings, *Weicherding v. Riegel,* 160 F.3d 1139 (7th Cir. 1998); *Waldridge v. American Hoechst Corp.,* 24 F.3d 918 (7th Cir.1994); nor may that party rely upon conclusory allegations in affidavits. *Smith v. Shawnee Library Sys.,* 60 F.3d 317, 320 (7th Cir. 1995).

During its summary judgment analysis, the court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Bombard v. Fort Wayne Newspapers, Inc.,* 92 F.3d 560 (7th Cir.1996). Furthermore, it is required to analyze summary judgment motions under the standard of proof relevant to the case or issue. *Anderson,* 477 U.S. at 252–55, 106 S.Ct. 2505. Applying the above standard, this Court addresses the Defendants' motions.

### IV. ANALYSIS

This Order addresses both Defendants' Motions for Summary Judgment. NSRC has moved for summary judgment on two grounds: first that it was not negligent; second, in a supplemental brief, on the grounds that FRSA regulations supercede the FELA basis for Grimes' negligence claim against the railroad and preclude recovery. This second basis is drawn from NSRC's interpretation of the Seventh Circuit's recent ruling in *Waymire v. Norfolk & Western Railway Company,* 218 F.3d 773 (7th Cir. July, 2000). Drewery has moved for summary judgment on the grounds that an intervening, superceding cause cut off his liability for Grimes' injuries. The railroad's claims will be addressed first, starting with the preclusion issue because, if Grimes claims are pre-cluded, then the negligence issue becomes moot.

### A. Norfolk's Motion for Summary Judgment

#### 1. Preclusion of Plaintiff's FELA Claims by FRSA Regulations

Some version of the FELA has been on the books as enacted by Congress since the first decade of the Twentieth Century. It was enacted in the heyday of American steam railroads. *Williams v. National Railroad Passenger Corp.,* 161 F.3d 1059, 1061 (7th Cir.1998). When Congress enacted FELA, it's focus was on reducing injuries and death resulting from accidents on interstate railroads. *Consolidated Rail Corp. v. Gottshall,* 512 U.S. 532, 542, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994). Recognizing the physical dangers inherent in the operation of a railroad, Congress "crafted a federal remedy that shifted part of the 'human overhead' of doing business from employees to their employers." *Id.* The FELA is a broad remedial statute which the United States Supreme Court construes liberally in order to effectuate its purposes. *Gottshall,* 512 U.S. at 543, 114 S.Ct. 2396. FELA provides that railroads operating in interstate commerce:

> shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce ... for such injury or death resulting in whole or part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

In 1970, Congress passed the Federal Railroad Safety Act, 49 U.S.C. § 20101 *et. seq.* ("FRSA") for the purpose of promoting rail safety and making laws, regulations and orders related to railroad safety "nationally uniform to the extent possible." 49 U.S.C. § 20106. This purpose is compatible with the purpose of FELA, to promote worker safety and to make railroads liable for injuries caused by their own

negligence. In addition, under FRSA, Congress gave the Secretary of Transportation the authority to prescribe regulations and issue orders for every area of railroad safety. 49 U.S.C. § 20103(a). To facilitate the goal of national uniformity, the FRSA has a preemption clause specifically relating to state law which provides that states may regulate railroad safety "until the Secretary of Transportation prescribes a regulation or issues an order covering the subject matter of the State requirement." 49 U.S.C. § 20106. In cases brought under state law, the Supreme Court has found two areas, speed regulations and warning signs at grade crossings, where federal regulations pursuant to FRSA have "covered" the field such that any attempts at state regulation inconsistent with the federal regulations are preempted. *See CSX Transportation, Inc. v. Easterwood*, 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993); *and Norfolk Southern Railway Co. v. Shanklin*, 529 U.S. 344, 120 S.Ct. 1467, 146 L.Ed.2d 374 (2000).

On July 21, 2000, the Court drew the parties' attention to the Seventh Circuit Court of Appeals' recent ruling in *Waymire v. Norfolk & Western Railway Company*, 218 F.3d 773 (7th Cir. July, 2000), which extended the Supreme Court's holding in *Easterwood* and *Shanklin* to employee negligence suits under the FELA. In *Waymire*, a railroad employee brought an FELA claim against his employer, Norfolk and Western Railway Co., for injuries he incurred during a train-truck collision at a crossing. *Waymire*, 218 F.3d at 774. The employee alleged the defendant railroad was negligent in allowing the train to travel at an unsafe speed and because it used inadequate warning devises at the crossing. *Id.* These are exactly the same claims which the Supreme Court found to be preempted when brought under state law in *Easterwood* and *Shanklin.* In *Waymire*, the Seventh Circuit reasoned as to the train's speed that it would "seem absurd to reach a contrary conclusion in this case when the operation of both trains was identical, and when the Supreme

Court has already found that the conduct is not culpable negligence." *Waymire*, 218 F.3d at 776. In addition the Court determined that the Plaintiff's FELA claim asserting inadequate warning devices at the crossing was also superseded by FRSA and its comprehensive regulations relating to warning devices at grade crossings. *Id.* at 777. The Seventh Circuit concluded that to effectuate the goal of uniformity under FRSA, the standard for train speed and warning devices at grade crossings should be the same for all negligence claims against railroads whether brought under state law or the FELA.

The question before this Court is whether *Waymire* intervenes to rearrange the standards of care and the basis of liability in the FELA claim between Grimes and Norfolk. Close attention must now be given to both the district court and the court of appeals decisions in *Waymire*, 65 F.Supp.2d 951 (S.D.Ind.1999), 218 F.3d 773 (7th Cir.2000). Both parties have briefed the issue and, having the benefit here of counsel who were also counsel in *Waymire,*the Court now considers the applicability of the Seventh Circuit's opinion to this case.

The Plaintiff makes two basic arguments in his complaint against the railroad. The first is that NSRC was negligent because it would have discovered the hole and been able to correct it if its inspections of the railroad right-of-way had been adequate. (Pl.'s Ans. to NSRC at 15.) Therefore, it had constructive notice of the defect and failed to correct it. The second argument is that NSRC has an obligation under both statutes to provide employees with a safe workplace, and that NSRC failed to provide a safe walkway for conductors when company policy requires them to get out and make a visual inspection of the train. NSRC draws the Courts attention to several regulations enacted under FRSA which it alleges relate to these two claims and therefore "cover" the field. Under NSRC's interpretation of *Waymire*, compliance with these regulations preclude the

Plaintiff's negligence suit and essentially make it immune to FELA suits arising out of accidents that occur when employees in the course of their employment must find a place to walk down the railroad right-of-way. These two regulations relate to proper construction of the roadbed, including the requirements for placement of the ballast stones, and inspection of the same area to check for compliance. The regulations in effect at the time of Grimes' accident read as follows:

PART 213 TRACK SAFETY STANDARDS

§ 213.1 Scope of Part

This part prescribes initial minimum safety requirements for railroad track that is part of the general railroad system of transportation. The requirements prescribed in this part apply to specific track conditions existing in isolation. Therefore, a combination of track conditions, none of which individually amounts to a deviation from the requirements in this part, may require remedial action to provide for safe operations over that track.

* * *

Subpart B—Roadbed

§ 213.31 Scope.

This subpart prescribes minimum requirements for roadbed and areas immediately adjacent to the roadbed.

* * *

§ 213.37 Vegetation.

Vegetation on railroad property which is on or immediately adjacent to roadbed must be controlled so that it does not—

* * *

(c) Interfere with railroad employees performing normal trackside duties;

* * *

Subpart D—Track Structure

§ 213.101 Scope.

This subpart prescribes minimum requirements for ballast, crossties, track assembly fittings, and the physical condition of rails.

§ 213.103 Ballast; general.

Unless it is otherwise structurally supported, all track must be supported by material which will—

(a) Transmit and distribute the load of the track and railroad equipment to the subgrade;

(b) Restrain the track laterally, longitudinally, and vertically under dynamic loads imposed by railroad rolling equipment and thermal stress exerted by the rails;

(c) Provide adequate drainage for the track; and

(d) Maintain proper track cross-level, surface and alinement.

* * *

Subpart F—Inspection

§ 213.231 Scope.

This subpart prescribes requirements for the frequency and manner of inspecting track to detect deviations from the standards prescribed in this part.

§ 213.233 Track inspections.

(a) All track must be inspected in accordance with the schedule prescribed in paragraph (c) of this section by a person designated under Sec. 213.7.

(b) Each inspection must be made on foot or by riding over the tracks in a vehicle at a speed that allows the person making the inspection to visually inspect the tracks' structure for compliance with this part. However, mechanical, electrical and other track devices may be used to supplement visual inspection. If a vehicle is used for visual inspection the speed of the vehicle may not be more than 5 miles per hour when passing over track crossings, highway crossings, or switches.

(c) Each track inspection must be and in accordance with the following schedule:

(For Class 4 track) ... Twice weekly with at least 1 calendar day interval between inspections.

(d) If the person making the inspection finds a deviation from the requirements

of this part, he shall immediately initiate remedial action.

49 C.F.R. § 213

■ NSRC alleges that it is in compliance with all these regulations, therefore it cannot be held liable for negligently inspecting the track or for failing to provide a safe walkway. The Plaintiff claims that fact questions exist as to whether NSRC was even in compliance with this section because its usual practice is to use high rail vehicles to inspect the track traveling at a rate of 20 to 25 miles per hour. The Plaintiff alleges that at this rate of speed, the inspector would miss many hazardous conditions that could cause injury to employees. This regulation specifies a speed for inspecting crossings, but not for inspecting between crossings. Therefore, the subject matter is not identical. The Plaintiff's claim that NSRC failed to adequately inspect the track by performing the inspection at too high a rate of speed is therefore not precluded by the FRSA regulations.

■ The Plaintiff's second claim is that the railroad was negligent in failing to provide a safe walkway for employees to use when they must walk alongside the train to inspect the cars. The Plaintiff alleges that it is not uncommon for conductors to have to perform train inspections pursuant to NSRC requirements, therefore NSRC has a duty to provide a safe walking surface. NSRC alleges that the Plaintiff's claim is precluded because it has complied with detailed regulations about track construction and ballasting. The Circuit Courts of Appeal are split over whether compliance with the regulations preempts a state law cause of action for failure to provide safe walkways. *See Missouri Pacific Railroad Co. v. Railroad Commission of Texas,* 833 F.2d 570 (5th Cir.1987)(reasoning that the decision by the FRA not to promulgate specific track walkway provisions did not indicate an intent to "cover the subject matter" of walkways and in no way suggests that the FRA has decided as a matter of policy that walkway regulations must be national in

character and must preempt state action); *but see Missouri Pacific Railroad Co. v. Railroad Commission of Texas,* 948 F.2d 179, 185 (5th Cir.1991), *cert. denied* 507 U.S. 1050, 113 S.Ct. 1943, 123 L.Ed.2d 649 (1993) (holding on remand, based on expert testimony, that the state regulations at issue were inconsistent with the mandated track structure requirements and so were preempted); and *Fernow v. Burlington Northern Santa Fe R. Co.,* 2000 WL 1175678 (S.D.Tex.2000)( denying a motion for summary judgment because fact issues remained as to whether a state regulation governing railroad walkways was preempted by the FRSA); *see also, Southern Pac. Transportation Co. v. Public Utilities Comm. of State of Cal.,* 647 F.Supp. 1220 (N.D.Cal.1986), *aff'd per curiam* 820 F.2d 1111 (9th Cir.1987)(stating that there has been no federal preemption of California's track clearance and walkway requirements), and *Illinois Central Gulf v. Tennessee Public Service Comm.,* 736 S.W.2d 112 (Tenn.App.1987)(holding that the Secretary of Transportation had not adopted a rule or regulation concerning walkway requirements in railroad yards sufficient to preempt any state regulations, where the FRA had only enacted regulations which dealt with drainage, vegetation and track structure); *but see Norfolk and Western Railway Co. v. Public Utilities Comm. of Ohio,* 926 F.2d 567, 571 (6th Cir.1991) (holding FRA regulations preempted state regulation of railroad bridge walkways); *Black v. Seaboard System Railroad,* 487 N.E.2d 468, 469 (Ind.Ct.App.1986) (stating that although unsafe walkways have not been the subject of specific federal regulations, the regulations as adopted indicate a congressional determination to regulate the entire railroad area because walkways are part of the track structure and rail system that in general present an area preempted by FRA regulations).

Every circuit that has considered the issue of walkways has concluded that the FRSA is silent on the question of walkways. The regulations are directed toward creating a safe roadbed for trains,

not a safe walkway for railroad employees who must inspect the trains. In view of the fact that this railroad requires its employees to perform numerous trackside inspections of its trains for various reasons, this Court declines to find anything in the regulations cited by the Defendant that precludes this Plaintiff from asserting that the railroad was negligent for failing to provide a safe place to walk.

There is also nothing in the language or legislative history of any enactment, including FRSA, that indicates the serious purpose of undermining the basic core of FELA and its essential purposes. Neither has the Supreme Court, nor for that matter any decision of the Circuit Courts of Appeal, indicated a basic hostility to the legislative purpose embedded in FELA, now or in the past. This Court does not conceive either of the two Supreme Court cases referred to or the recent *Waymire* case in this Court of Appeals as reflecting judicial hostility to the basic purposes of FELA. The Supreme Court has never ruled on the effect of FRSA on negligence claims under FELA, and the Circuits that have considered the issue are split. *See Waymire*, 218 F.3d at 776 (discussing the split in the circuits on the issue of a FELA claim for unsafe speed in light of the Secretary's adoption of speed regulations).

The Defendant NSRC has asked this Court to extend *Waymire* well beyond its holding to preclude a negligence claim under FELA for any conduct by the railroad even remotely covered by a regulation enacted under FRSA. This Court declines the invitation to do so.

**2. Plaintiff's Claim for Negligent Inspection**

The easier question to resolve here at least preliminarily is a classical standard application of the FELA, 45 U.S.C. § 51, to a railroad premises injury to a railroad employee at a time and place where the railroad employee was clearly engaged in appropriate conduct. This is said understanding that there is nearly always some argument under the comparative fault provisions of the FELA to diminish any damage award by the percentage of the plaintiff's negligence. That issue does not have to be confronted here.

■ To effectuate its broad remedial purpose, the Supreme Court of the United States has liberally construed FELA and held that a relaxed standard of causation applies under the statute. *Gottshall*, 512 U.S. at 543, 114 S.Ct. 2396. Under that relaxed standard, " 'the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought.' " *Id.* (*citations omitted*). However, the Court made it clear in *Gottshall* that FELA is not a general worker's compensation statute. *Id.* The basis of employer liability is still negligence, not the fact that injury has occurred. *Id.* Therefore, to survive summary judgment, even under the reduced standard applicable to FELA cases, the Plaintiff must produce some evidence that the railroad's negligence caused his injuries. *Williams*, 161 F.3d at 1062.

■ Applying this standard, the Seventh Circuit requires the FELA plaintiff to establish the common law elements of negligence, including duty, breach, foreseeability, and causation. *Id.* (citations omitted). Under the FELA, the railroad is held to a prudent person standard, and a plaintiff who wishes to demonstrate breach must show circumstances that "a reasonable person would foresee as creating a potential for harm." *Id.* In *Williams*, the Seventh Circuit adopted the approach used by most of the other circuits to reach the issue of reasonable foreseeability in a FELA action, equating foreseeability with notice, either actual or constructive. *Id.* In this way, the Court reasoned, an employer is not liable if it has no reasonable way of knowing that a potential hazard exists. *Id.*

■ The Plaintiff Grimes asserts that had the Defendant railroad properly inspected the track, it would have discovered

the hole that Grimes allegedly stepped in and could have prevented his injuries. (Pl.'s Ans. to NSRC at 17.) Grimes believes that the inspections were inadequate on two bases. First, when the high rail cars were used, the inspections were conducted at too fast a rate of speed to be effective. (*Id.*) Second, he argues that from time to time, inspections should be made on foot, and that such an inspection would have revealed the hole. (Id.) Therefore, Grimes argues that NSRC had notice because it knew, or should have known, had it properly inspected the track, of the hole that caused his injury. In addition, Grimes alleges that an NSRC employee mowed in the area, and that he was moving at a slow enough rate of speed that he should have spotted the hole and reported it. (Id. at 16). Therefore, Grimes argues that NSRC had notice of the dangerous condition and should be held liable for his injuries.

NSRC employees testified that the high rail inspections were usually conducted at an average rate of speed of 25 miles per hour. (Pl.'s Ans. to NSRC at 17.) Plaintiff questions whether the inspectors, traveling at this speed, can adequately check the right-of-way for conditions that could pose a hazard to employees who must walk along the right-of-way to inspect a train. (Id.) This is a question of fact that should be resolved by a jury after the presentation of evidence, and therefore is not suitable for summary judgment.

However, this does not end the discussion. In this case, it is questionable whether an inspection at a slower rate of speed, or even an inspection on foot, would have revealed the hole that allegedly caused the Plaintiff's injuries. In his deposition, the Plaintiff admitted that the hole would have been difficult to see, even in the daylight, because it contained dead grass that was the same color as the surrounding dirt. (Grimes Dep. II. at 4–5). This admission was confirmed by NSRC when two employees searched the quarter-mile stretch of track where the Plaintiff was injured, looking from the edge of the ballast to the fence line, and failed to discover the elusive hole. (NSRC's Br. in Supp. at 4).

Based on this information, and the fact that the Plaintiff has produced no evidence other than his own testimony to establish the existence of the hole, the Plaintiff's claim of inadequate inspection fails, even though it is not precluded, because he has failed to produce any evidence that NSRC had notice of the hole and could have prevented his injuries had it properly inspected the track. While the standard is relaxed to establish negligence in an FRSA claim, the Seventh Circuit has made it clear that the Plaintiff must produce some evidence that negligence on the part of the railroad in some way caused his injuries to survive a motion for summary judgment. *See Williams,* 161 F.3d at 1062 (stating that the Seventh Circuit has consistently declined to infer negligence when a plaintiff fails to produce any evidence suggesting that the employer played even the slightest role in bringing about the injury) (citations omitted). Therefore, NSRC's Motion for Summary Judgment is **GRANTED** on the issue of negligent inspection.

### 3. Plaintiff's FELA Claim for Failure to Maintain a Safe Walkway

The Plaintiff alleges that NSRC's primary negligence was in failing to provide a safe walkway for employees when company policy requires them on specified occasions to walk along the tracks to inspect NSRC trains. The Plaintiff alleges that, on the stretch of track where he was injured, the grade was too steep and the ballast rocks too large to safely walk next to the ties. (Pl.'s Ans. to NSRC at 4.) As a result, he found that the safest place to walk was at the base of the ballast where it joins the mowed grass. (Id.) This area was still hazardous because of weeds, dead mowed grass, scattered ballast stones, and woodchuck holes. (Id.) In addition, the Plaintiff alleges that NSRC has standards for track beds that include an area that is safe to walk on next to the ties, but for

some reason on this section of track, failed to follow its own standards. (Id. at 11.)

■ NSRC has invoked Judge Learned Hand's famous negligence formula from *Carroll Towing* in an effort to prove that it was not negligent. (NSRC's Br. in Supp. at 11.) Judge Hand stated the formula algebraically, with liability depending on whether the burden of adequate precautions is less than the gravity of injury times the probability of an injury. *United States v. Carroll Towing Co.*, 159 F.2d 169 (2d Cir.1947). The Seventh Circuit has applied Judge Hand's formula in the context of a FELA claim. *See Reardon v. Peoria & Pekin Union Ry. Co.*, 26 F.3d 52, 53–54(7th Cir.1994); *Nichols v. Northeast Ill. Regional Commuter Railroad Corp.*, 1999 WL 495131, at * 3 (N.D.Ill.). Under the formula, "a conclusion that the burden of precautions would substantially exceed the loss such precautions could prevent forecloses the possibility of recovery." *Reardon*, 26 F.3d at 54. The railroad argues that the burden of providing safe walkways on its almost 22,000 miles of railroads far exceeds the probability of injury times the severity of injury to employees walking along the right-of-way. (Def.'s Br. in Supp. at 14–5.)

NSRC's Trainmaster William Banta, testified in his deposition that it was "very rare" for a conductor or other crewmen to have to walk along or near the tracks in the vicinity of the accident. (NSRC's Br. in Supp. at 4.) He stated that in the past five years, he could recall no crew member having to walk the area in question. (Id. at 14.) In direct contradiction, the Plaintiff has produced affidavits from two conductors and an engineer stating that they regularly work this route and estimate that incidents requiring them to stop occur in this area on as many as twenty to twenty-five percent of their runs. (Pl.'s Br. in Opp. Ex.'s 1, 2, and 3.) The affiants testified to a number of reasons for the stops, the primary one being a wayside detector called a "hot box" located in the area that detects overheating and other problems with the cars. (Id.) When the "hot box" detects a problem, the train must stop and a conductor must get off and walk the train to make sure the parts are in proper working order. (Id.)

Whether the railroad could provide safe walkways adjacent to the ties, how often they are needed, how much they would cost, and application of the cost benefit analysis implied in Judge Hand's formula are all factual issues that are particularly inappropriate for summary judgment. Therefore, NSRC's Motion for Summary Judgment is DENIED on the issue of safe walkways.

## B. Drewery's Motion for Summary Judgment

■ The Plaintiff in Claim II alleges that the negligence of the Defendant Drewery in leaving his car parked on the railroad tracks caused a collision between the train and the automobile which in turn led to his injuries. This is a question of the common law of negligence in Indiana. In order to recover for negligence under Indiana law, the plaintiff must prove the following: 1) the defendant owed the plaintiff a duty of care; 2) the defendant breached that duty of care by failing to conform his conduct to the requisite standard of care; and 3) the breach was the proximate cause of the plaintiff's injuries. *Blake v. Calumet Const. Corp.*, 674 N.E.2d 167, 169–70 (Ind.1996). The element of "proximate cause" requires both factual causation, in the sense that "but for" the defendant's conduct, the plaintiff would not have been injured; and legal causation, meaning it must be "immediate, nearest, direct, next in order, and, in its legal sense, closest in causal connection." *Walker v. Jones*, 511 N.E.2d 507, 509 (Ind. Ct.App.1987).

The Defendant Drewery argues that he is entitled to summary judgment as a matter of law because the Plaintiff failed to establish that Drewery's conduct of leaving his parked car on the tracks was a "proximate cause" of the Plaintiff's injury's. (Drewery's Br. in Supp. at 4–7.) He bases

this argument on the fact that Grimes was not injured in the collision, but rather after the collision when he exited the train and proceeded along the tracks to inspect the train for damage. (Id.) It is not reasonably foreseeable, he asserts, that conditions would exist along the railroad right-of-way "where Grimes could subsequently injure himself while conducting the railroad's business." (Id. at 6). He argues that both the railroad's negligence and the Plaintiff's own negligence were intervening, superceding causes that served to cut off Drewery's liability. (Id. at 10.)

■ To be considered a proximate cause of the Plaintiff's injuries, Drewery's negligent act must have set in motion "a chain of circumstances which in natural and continuous sequence lead to the resulting injury." *Ashcraft v. Northeast Sullivan County School Corp.*, 706 N.E.2d 1101 (Ind.Ct.App.1999). The test in Indiana is whether the plaintiff's injury is a "natural and probable consequence which, in light of all the circumstances, should reasonably have been foreseen or anticipated" by the defendant. *McKinney v. Public Service Co. of Indiana, Inc.*, 597 N.E.2d 1001, 1005 (Ind.Ct.App.1992). A person need not foresee the exact manner in which the harm occurs, but must "in a general way, foresee the injurious consequences of his act or omission." *Frye v. American Painting Co.*, 642 N.E.2d 995, 998 (Ind.Ct. App.1994).

In his Motion for Summary Judgment, it appears that Defendant Drewery misperceives the concept of an intervening, superceding cause. In all the cases cited, it was the negligence of a third party, not a party to the suit, that had the effect of cutting off the defendant's liability. For example, in *Ashcraft,* the plaintiff was injured at a school function when a car parked by a third person rolled across the parking lot and hit her. *Ashcraft*, 706 N.E.2d at 1106. Drewery also cites *Havert v. Caldwell*, 452 N.E.2d 154 (Ind. 1983), in which the Plaintiffs were police officers who stopped their car. It was subsequently hit by a second car, and then

a third car. *Id.* The Court stated the rule as, "Where there is an original wrongful act of defendant and an intervening act *of a third person*, a fundamental test in determining defendant's liability for his wrongful act is the test of foreseeability of the resultant injury ..." *Id.* at 158 (emphasis added). Drewery's third case is *Walker v. Jones*, 511 N.E.2d 507 (Ind.Ct. App.1987), in which two motorists collided while people were chasing a calf down the interstate. The Court held that the owner of the calf could not be held liable where there was no evidence that the calf's presence on the median caused the accident, but rather it was caused by the negligence of third parties, the drivers of the vehicles. *Id.* at 510. Similarly, Indiana has several cases in which the liability of a car owner who negligently left keys in the car was cut off by a thief who stole the car and subsequently injured someone. See *Kiste v. Red Cab, Inc.*, 122 Ind.App. 587, 106 N.E.2d 395 (1952); *Surratt v. Petrol, Inc.*, 160 Ind.App. 479, 312 N.E.2d 487, 488. (Ind.Ct.App.1974) (stating, "It is our opinion that Kiste properly decided that as a matter of law, the negligent leaving of the ignition keys in the automobile could not be considered the proximate cause of injuries later resulting from the negligent operation of the stolen automobile by a thief.")

■ At a minimum, then, to make the argument that an intervening, superceding cause cuts off the original tortfeasor's liability, there must be a negligent act by a third party that occurs somewhere between the defendant's original negligent act and the plaintiff's injuries. In the present case, there is no third party whose negligent act occurred between Drewery's negligent act and Grimes' injuries. If NSRC was negligent, its negligence must have occurred before the accident because the accident took place in the middle of the night. The appropriate claim for Drewery to make against the railroad is one for comparative fault under Indiana's Comparative Fault Act, I.C. § 34–51–2–1 *et seq.* If

Drewery is alleging that Grimes' own negligence caused his injuries, Drewery is still under the Indiana Comparative Fault Act, and Drewery's liability is only cut off if a jury finds that Grimes was more than fifty percent at fault.

■ The Court finds as a matter of law that, when an individual parks a car on the railroad tracks at a crossing in the middle of the night, it is a logical consequence and reasonably foreseeable that it will eventually be hit by a train. It is also foreseeable that railroad employees will have to get off the train after such a collision and inspect the train for damage and derailed cars and offer assistance to the driver of the car. Finally, it is foreseeable that a railroad employee, performing this inspection in the dark, could be injured. The Court holds therefore that the Plaintiff's injuries were part of a continuous chain of events that were set in motion by Drewery's negligent act, and should reasonably have been foreseen by Drewery when he allegedly parked his car on the railroad tracks. Therefore, Drewery's Motion for Summary Judgment must be DENIED.

### V. CONCLUSION

For the foregoing reasons, Defendant NSRC's Motion for Summary Judgment is GRANTED in part, as it relates to the claim of negligent inspection, and DENIED in part, as it relates to the claim of failure to maintain a safe walkway. Defendant Drewery's Motion for Summary Judgment is hereby DENIED. This case deserves and will receive fast track treatment to ensure an early trial, which will be set contemporaneously with this opinion.

**IT IS SO ORDERED.**