Larry W. BOOTH, Appellant,

v.

CSX TRANSPORTATION,
INC., Appellee.

No. 2009–CA–002103–MR.

Court of Appeals of Kentucky.

Jan. 28, 2011.

Alva A. Hollon, Jr. and John O. Hollon (argued), Jacksonville, FL, Allen K. Gruner (argued), Louisville, KY, for appellant.

Rod D. Payne and Thomas G. Goodwin (argued), Louisville, KY, for appellee.

Before ACREE, Judge; HENRY and ISAAC,[1] Senior Judges.

1. Senior Judge Sheila R. Isaac sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580. Senior Judge

Michael L. Henry concurred in this opinion prior to the expiration of his term of senior judge service. Release of the opinion was delayed by administrative handling.

## OPINION

ISAAC, Senior Judge:

Larry W. Booth appeals from a Jefferson Circuit Court order granting summary judgment to CSX Transportation, Inc. Booth allegedly injured his knees while employed as a railroad carman for CSX. The Jefferson Circuit Court ruled that Booth's claims for damages under the Federal Employers' Liability Act, 45 U.S.C. § 51, *et seq.* ("FELA") were preempted by regulations promulgated under the Federal Railway Safety Act, 49 U.S.C. § 20101, *et seq.* ("FRSA"). We conclude that although a regulation promulgated under the FRSA may preclude a FELA claim, it did not do so in this case because the regulation at issue does not cover or substantially subsume the subject matter of the suit.

Booth worked for CSX from 1973 through March 2002. From 1973 until 1986 or 1987, his work as a carman required him to walk for long distances and for substantial periods of time on large and uneven ballast in CSX's Louisville rail yards. Ballast consists of stone chips which are placed under and around railroad tracks and ties to provide structural support, drainage and erosion protection. Booth described the ballast as twisting and rolling under his feet. According to Booth, conditions improved in the late 1980s when CSX began to use smaller ballast and even replaced one area of ballast with concrete. After 1986 or 1987, his job duties changed ·and the length and frequency of his walks in the rail yard decreased. In 2001, he began to experience problems with his knees, and he ultimately underwent bilateral knee replacement surgeries.

In 2003, Booth filed a FELA suit against CSX in Jefferson Circuit Court, alleging that its negligent maintenance of the ballast in its rail yards had caused the injuries to his knees. CSX moved for summary judgment, arguing that Booth's testifying physicians were unable to establish causation between the size of the ballast in the rail yard walkways and Booth's injuries. CSX also argued that Booth's FELA claims were precluded by federal regulations promulgated under the FRSA. The circuit court granted summary judgment to CSX solely on the medical causation issue. On appeal, that judgment was reversed and remanded in *Booth v. CSX Transportation, Inc.*, 211 S.W.3d 81 (Ky. App.2006). Upon remand, CSX filed another motion for summary judgment which raised the preclusion argument again. The circuit court agreed that Booth's FELA claim was precluded by the FRSA and entered summary judgment for CSX. This appeal followed.

■ The FELA was enacted by Congress in 1908 with the aim of promoting railroad safety and "to provide a remedy to railroad employees injured as a result of their employers' negligence." *Waymire v. Norfolk and Western Railway Co.*, 218 F.3d 773, 775 (7th Cir.2000). The FELA "provides a uniform method for compensating injured railroad workers and their survivors. It is remedial legislation and is to be construed liberally in order to accomplish its humanitarian purpose." *CSX Transportation, Inc. v. Moody*, 313 S.W.3d 72, 79 (Ky.2010) (footnotes omitted). It makes a railroad

> liable in damages to any person suffering injury while he is employed by such carrier in such commerce ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery,

track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51.

█ The FELA provides the exclusive remedy for a railroad employee injured as a result of his employer's negligence. *Lane v. R.A. Sims, Jr., Inc.*, 241 F.3d 439, 442 (5th Cir.2001).

The other federal statute implicated in this case, the FRSA, was enacted in 1970 in order "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." *Norfolk Southern Railway Co. v. Shanklin*, 529 U.S. 344, 347, 120 S.Ct. 1467, 1471, 146 L.Ed.2d 374 (2000) (quoting 49 U.S.C. § 20101). Under the FRSA, the Secretary of Transportation is authorized to "prescribe regulations and issue orders for every area of railroad safety[.]" *Id.*

█ The FRSA contains a preemption clause in order to ensure that "[l]aws, regulations, and orders related to railroad safety . . . shall be nationally uniform to the extent practicable." 49 U.S.C. § 20106(a)(1). The preemption clause provides that the states may regulate railroad safety "until the Secretary of Transportation . . . prescribes a regulation or issues an order covering the subject matter of the State requirement." 49 U.S.C. § 20106(a)(2). "A state-law negligence action is 'covered' and therefore preempted if a FRSA regulation 'substantially subsume[s]' the subject matter of the suit." *Nickels v. Grand Trunk Western R.R., Inc.*, 560 F.3d 426, 429 (6th Cir.2009), *citing CSX Transportation, Inc. v. Easterwood*, 507 U.S. 658, 664, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). Significantly for purposes of this appeal, "[t]his provision explicitly preempts **only** State laws, regulations, and orders; it does not mention other federal safety standards." *Id.* (Emphasis supplied).

In the case presently before us, the circuit court determined that a FRSA regulation on ballast covers the subject matter of Booth's suit and therefore has barred his FELA claims.

In reviewing a grant of summary judgment, our inquiry focuses on "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky.App.1996); Kentucky Rules of Civil Procedure (CR) 56.03. "[T]he proper function of summary judgment is to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor." *Steelvest v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky.1991).

Booth raises the following arguments on appeal: (1) preemption under the FRSA applies only to state laws and regulations and should not be extended to claims under the FELA, a federal statute; and (2) even if preemption does apply, the ballast regulation at issue does not preclude Booth's FELA claim because it does not substantially subsume, discuss, or even mention walkways in rail yards.

The first argument on appeal concerns whether a federal regulation promulgated under the FRSA can preclude a FELA claim in the same manner in which it can preempt state regulations or state common law claims. For instance,

[i]n cases brought under state law, the Supreme Court has found two areas, speed regulations and warning signs at grade crossings, where federal regulations pursuant to FRSA have "covered" the field such that any attempts at state regulation inconsistent with the federal regulations are preempted.

*Grimes v. Norfolk Southern Ry. Co.*, 116 F.Supp.2d 995, 1000 (N.D.Ind.2000), *citing Easterwood*, 507 U.S. 658, 113 S.Ct. 1732 and *Shanklin*, 529 U.S. 344, 120 S.Ct. 1467. Although the United States Supreme Court has not directly addressed whether the preemption analysis can be extended to claims made under the FELA, several federal courts have held that, in the interests of fairness and national uniformity, a FELA claim should be precluded if the same claim made under common law would be preempted by the FRSA. The Court of Appeals for the Seventh Circuit, in a case involving a FELA plaintiff alleging injuries caused by excessive train speed, alluded to Congress' intent that railroad safety regulations be nationally uniform and concluded that

> [s]uch uniformity can be achieved only if the regulations covering train speed are applied similarly to a FELA plaintiff's negligence claim and a non-railroad-employee plaintiff's state law negligence claim. Otherwise, a railroad employee could assert a FELA excessive-speed claim, but a non-employee motorist involved in the same collision would be precluded from doing so. Dissimilar treatment of the claims would have the untenable result of making the railroad safety regulations established under the FRSA virtually meaningless: The railroad could at one time be in compliance with federal railroad safety standards with respect to certain classes of plaintiffs yet be found negligent under the FELA with respect to other classes of plaintiffs for the very same conduct.

*Lane*, 241 F.3d at 443 (internal citation omitted).

Similarly, the Court of Appeals for the Sixth Circuit has stated that the uniformity demanded by the FRSA can be achieved only if federal rail safety regulations are applied similarly to a FELA plaintiff's negligence claim and to a non-railroad-employee plaintiff's state law negligence claim and that not abiding by the preclusive nature of the regulations would result in dissimilar treatment of the claims and inconsistent verdicts. *Nickels*, 560 F.3d at 430.

We agree with the reasoning employed in these cases and conclude that Booth's claim is precluded if the same claim brought by a non-railroad employee under state law would be preempted under the FRSA.

We note that the term preemption applies exclusively to the interaction of state and federal laws; whereas the term applied to the interaction between the FELA and the FRSA is preclusion. The circuit court in this case used the term "preemption" in its order, but the effect is the same because the analysis employed to determine if preclusion will occur is identical to that applied in preemption cases. *See e.g. Waymire*, 218 F.3d 773 (applying the U.S. Supreme Court's preemption analysis in *Easterwood*, 507 U.S. 658, 113 S.Ct. 1732 to the interaction of the FELA and the FRSA).

■ Booth next argues that the regulation at issue, 49 C.F.R. § 213.103, does not preclude his FELA claim because it sets forth solely the specifications for creating a safe roadbed for trains and does not address what constitutes safe walking conditions in its rail yards.

The regulation provides as follows:

Unless it is otherwise structurally supported, all track shall be supported by material which will—

(a) Transmit and distribute the load of the track and railroad rolling equipment to the subgrade;

(b) Restrain the track laterally, longitudinally, and vertically under dynamic loads imposed by railroad rolling equip-

ment and thermal stress exerted by the rails;

(c) Provide adequate drainage for the track; and

(d) Maintain proper track crosslevel, surface, and alinement.

49 C.F.R. § 213.103.

In order to have a preclusive effect, this regulation must "touch, cover or substantially subsume" the subject matter of Booth's suit. *Davis v. Union Pacific Railroad Co.,* 598 F.Supp.2d 955, 959 (E.D.Ark. 2009).

CSX urges us to adopt the holding of *Nickels,* 560 F.3d 426, in which the Sixth Circuit Court of Appeals held that 49 C.F.R. § 213.103 precluded the FELA claims of railroad employees who, like Booth, alleged injuries caused by years of walking on oversized track ballast. The Court of Appeals deemed the issue of reasonably safe walkways for employees adjacent to the railroad tracks to be inseparable from the issues of track stability and support governed by the regulation. *Id.* at 434.

We, on the other hand, are persuaded by the well reasoned dissent in *Nickels,* in part because of its close adherence to the analysis employed by the United States Supreme Court in *Easterwood,* 507 U.S. 658, 113 S.Ct. 1732 a case involving the preemption by a FRSA regulation of a state law claim. In *Easterwood,* the defendant railroad argued that a federal regulation limiting train speed to 60 m.p.h. precluded the plaintiff's negligence claim based on excessive speed. The *Nickels* dissenting opinion described the Supreme Court's analysis as follows:

The Supreme Court did *not* simply say that because the defendant's train was going under the speed limit, and because the claim was for excessive speed, the claim was preempted. Instead, the

Court was at pains to infer that the speed limit was not only a prohibition on going over 60 m.p.h., but also a permission to go up to 60 m.p.h. "Understood in the context of the overall structure of the regulations, the speed limits must be read as not only establishing a ceiling, but also precluding additional state regulation of the sort that respondent seeks to impose on petitioner."

*Nickels,* 560 F.3d at 434 (quoting *Easterwood,* 507 U.S. 658 at 674, 113 S.Ct. 1732). The dissent opinion concluded as follows:

No interrelation between physical support for trains and the surface of walkways has been identified in the regulatory scheme in this case. Whereas in *Easterwood* the Court found in effect that the regulatory scheme demanded that safety from crossway collisions come primarily from signals rather than slow speed, there is no basis for us to read that adequate physical support for trains and safe walkways for workers are interests that have been counterbalanced to permit the use of any grade of surface ballast on walkways.

*Id.* at 435.

In another factually similar case, a railroad company contended that the railroad employee plaintiff's claim regarding unsafe walkways was precluded because the company had complied with detailed regulations about track construction and ballasting. *Grimes,* 116 F.Supp.2d 995. The district court disagreed, observing that "[e]very circuit that has considered the issue of walkways has concluded that the FRSA is silent on the question of walkways. The regulations are directed toward creating a safe roadbed for trains, not a safe walkway for railroad employees who must inspect the trains." *Id.* at 1002–3. Like the *Grimes* court, we decline "to preclude a negligence claim under FELA for any conduct by the railroad even re-

motely covered by a regulation enacted under FRSA." *Id.*

CSX has cautioned that allowing Booth to pursue his FELA claims could result in a ruling that is inconsistent and incompatible with CSX's obligation under 49 C.F.R. § 213.103 to maintain the structural integrity of the railroad track. Booth alleges that the large and uneven ballast used by CSX caused his knee injuries; CSX argues that smaller ballast would not have been able to perform the stabilizing and drainage functions enumerated in the regulation and could have resulted in precisely the type of accidents the FRSA was enacted to prevent. Nothing in our opinion, however, should be construed as saying that

> a jury may require an action that violates the FRSA regulation. If, for instance, a successful FELA claim effectively created "a walkway requirement or other safety regulation that hindered or prevented a railroad from complying simultaneously with an FRA regulation designed to enhance safety in a different area," *Missouri Pacific Railroad Co. v. Railroad Commission of Texas,* 833 F.2d 570, 574 (5th Cir.1987), FELA relief would clearly be precluded on that ground.

*Nickels,* 560 F.3d at 435. No such showing has been made here, however, and CSX does not dispute that it now uses smaller ballast in its rail yards.

Finally, we address the deposition testimony of Roy Dean, who assisted in reviewing and revising the federal regulations promulgated under the FRSA. CSX argues that his testimony supports its argument that the ballast regulation covers walkway safety. Dean stated that the regulations did not specifically address walking, but that "[s]afety was an integral part of everything looked at. So I wouldn't say they would be completely exclusive of any aspects of walking." Although Dean's testimony may be useful in clarifying the regulations, we must ultimately be bound by the plain language of the regulations. The preemption clause of the FRSA "does not ... call for an inquiry into the Secretary's [of Transportation] purposes, but instead directs the courts to determine whether regulations have been adopted that in fact cover the subject matter of [the plaintiff's claim]." *Easterwood,* 507 U.S. at 675, 113 S.Ct. at 1743. In this case, the regulation did not.

The summary judgment of the Jefferson Circuit Court is reversed, and this matter is remanded for further proceedings in accordance with this opinion.

ALL CONCUR.