**Walter G. HERNDON, Appellant,**

v.

**NATIONAL RAILROAD PASSENGER CORPORATION, Appellee.**

**No. 01–CV–1349.**

District of Columbia Court of Appeals.

Argued Oct. 24, 2002.
Decided Jan. 16, 2003.

Larry Lockwood, Jr., pro hac vice, Portsmouth, VA, Francis P. Hajek, Virginia Beach, VA, and Lawrence M. Mann, Washington, DC, were on the brief for appellant.

Joseph S. Crociata, with whom Jonathan Eric Agin, Washington, DC, was on the brief, for appellee.

Before STEADMAN and FARRELL, Associate Judges, and NEWMAN, Senior Judge.

STEADMAN, Associate Judge:

Appellant Herndon, a conductor on what is commonly known as Amtrak, was injured when his train "lurched violently and unexpectedly" as it passed milepost 97 in the Baltimore–Potomac Tunnel. Herndon sued Amtrak for negligence under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51 et seq. In substance, he asserted that the train was traveling at an excessive speed under the circumstances, although that speed did not exceed the maximum authorized by federal regulations for that stretch of track. He also asserted that Amtrak had negligently failed to properly inspect, detect, and repair defects on the track. The trial court granted summary judgment to Amtrak. We affirm, holding that under *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993), the speed limit set by the federal authorities was determinative with respect to any endemic long-term track conditions and that Herndon had proffered no evidence to show that Amtrak was on notice of any particularized immediate track defect.

### A.

In moving for summary judgment, Amtrak argued that on the date in question it was in compliance with the Federal Railroad Safety Act of 1970 ("FRSA"), 49 U.S.C. § 20101 *et seq.* and its speed regulations. Relying on *CSX Transp. v. East-*

*erwood,* 507 U.S. at 675, 113 S.Ct. 1732, Amtrak argued that the FRSA speed regulations completely control the question of train speed with respect to traffic and track conditions and that because the train was within the permitted speed Herndon's claim should be barred, just as an analogous claim under state law would be pre-empted. Moreover, Amtrak argued that Herndon's proffer of evidence relating to track maintenance was too remote in time or too collateral to challenge the operation of the train or condition of the track on the date in question.

In opposition to Amtrak's motion, Herndon argued that the FRSA does not prohibit his claim, which he says focuses on an alleged failure to remedy the track condition or slow down for the track hazard. Herndon's statement of material facts in dispute, set forth here in full omitting deposition references, describes the basis of his claim as follows: "On several occasions prior to the subject incident, Amtrak received complaints about 'rough ride,' 'lurching' or 'rocking' of train cars when operating a train at the posted track speed when coming through the Baltimore–Potomac Tunnel, at or near milepost 97. The poor track condition and rough ride in the Baltimore—Potomac Tunnel at or near milepost 97 was widely known among the engineers and conductors who traveled that portion of track. The portion of track at or near where Mr. Herndon's injury occurred was subject to a speed restriction of more than one week, sometime between six and eighteen months ago, after which time a visible 'kink' in the track was gone."

We apply the well-established and oft-repeated *de novo* standard for review of grants of summary judgment, viewing the facts in the light most favorable to the non-movant. *See, e.g., Boulton v. Institute of Int'l Education,* 808 A.2d 499, 501–02 (D.C.2002).

### B.

■ We begin with an examination of the Supreme Court's holding in *Easterwood.* In that case, the plaintiff's husband was killed when his truck was hit by a train at a railroad crossing. The complaint charged negligence by the railroad both for traveling at an excessive speed and for failing to maintain adequate warning devices at the crossing. Although finding no pre-emption as to the warning devices, the Court held that the speed limit for that track set by the federal authorities[1] pre-empted any claim that the train should have been traveling at a slower speed. The Court noted: "On their face, the provisions of [the applicable regulation setting the speed] address only the maximum speeds at which trains are permitted to travel given the nature of the track on which they operate. Nevertheless, related safety regulations adopted by the Secretary reveal that the limits were adopted only after the hazards posed by track conditions were taken into account. Understood in the context of the overall structure of the regulations, the speed limits must be read as not only establishing a ceiling, but also precluding additional state regulations of the sort that respondent seeks to impose on petitioner." 507 U.S. at 674, 113 S.Ct. 1732.

It is true that the case before us differs from *Easterwood* in that Herndon's suit is brought under the FELA rather than state common law, and thus pre-emption in its constitutional sense does not apply. However, we agree with the federal circuit

---

1. Speed limits are set according to the class of track, which is determined by, inter alia, their gauge, alinement, curvature, surface uniformity, and number of crossties per length of track. 507 U.S. at 673, 113 S.Ct. 1732.

court cases that have found this to be a distinction without a policy difference. In *Waymire v. Norfolk & Western Ry. Co.*, 218 F.3d 773 (7th Cir.2000), *cert. denied* 531 U.S. 1112, 121 S.Ct. 856, 148 L.Ed.2d 770 (2001), the court held that a railroad employee's excessive speed negligence claims under the FELA were controlled by the FRSA. The railroad had been in compliance with the appropriate FRSA regulations concerning speed and this was conclusive. The court noted that pre-emption under the Supremacy Clause cannot apply to this situation where the court was faced with two federal statutes; however, the court found *Easterwood* to be instructive as to the intent of Congress to occupy a subject matter field with specific legislation. Congress intended that the effect of the FRSA be nationally uniform and this uniformity requires that non-railroad employees and railroad employees be treated similarly. "In *Easterwood,* the train was operating within the FRSA prescribed sixty miles per hour speed limit, as was N & W's train in this case. It would thus seem absurd to reach a contrary conclusion in this case when the operation of both trains was identical and where the Supreme Court has already found that the conduct is not culpable negligence." 218 F.3d at 776. In *Lane v. R.A. Sims, Jr., Inc.*, 241 F.3d 439 (5th Cir.2001), the Fifth Circuit followed the logic of *Waymire* in holding that a railroad employee's claims of excessive speed under the FELA were precluded by the FRSA. Lane argued that although his train was traveling at forty-five miles an hour in a sixty mile an hour zone, it was traveling at an excessive and unsafe speed under the circumstances, *i.e.,* heavy lunchtime traffic at a downtown crossing. In rejecting the argument, the court observed that "allowing juries in FELA cases to find negligence based on excessive speed, even though the train did not exceed that set by the FRSA regulations,

would further undermine uniformity, because it would result in the establishment, through such verdicts, of varying, uncertain speed claims at different crossings, as well as different speed limits at the same crossing, depending on the time of day, traffic conditions, and other variables." *Id.* at 443–44. *See also, Rice v. Cincinnati, New Orleans & Pac. R.R. Co.,* 955 F.Supp. 739 (E.D.Ky.1997); *Thirkill v. J.B. Hunt Transp., Inc.,* 950 F.Supp. 1105 (N.D.Ala.1996) (finding FELA excessive speed claim precluded by FRSA and regulations where train was traveling within speed limit set by regulations).

Appellant here concedes that the train was not exceeding the speed limit for that stretch of track set by the federal authorities. Under *Easterwood,* therefore, Herndon's claim must fail to the extent that it is based upon an argument that conditions endemic and long-term to that stretch of track mandated a slower speed, since the "hazards posed by track conditions were taken into account" in setting the federal speed limit.

## C.

■ *Easterwood,* however, did not completely preclude all actions at common law or under the FELA which allege excessive speed. In a footnote, the Court observed:

> Petitioner is prepared to concede that the pre-emption of respondent's excessive speed claim does not bar suit for breach of related tort law duties, such as the duty to slow or stop a train to avoid a specific, individual hazard. As respondent's complaint alleges only that petitioner's train was traveling too quickly given the "time and place," this case does not present, and we do not address, the question of FRSA's pre-emptive effect on such related claims.

507 U.S. at 675 n. 15, 113 S.Ct. 1732.

Several cases have recognized this footnote as carving out an exception to the

FRSA bar on excessive speed claims where the train should have slowed in response to a specific hazard, rather than an endemic condition, although the exception has rarely been applied in practice. In *Missouri Pacific R.R. Co. v. Lemon,* 861 S.W.2d 501 (Tex.Ct.App.1993), a line of illegally parked tank cars blocked the vision of the engineer in approaching a railroad crossing but he did not slacken his speed. The court upheld liability on the railroad, noting "[t]he improper parking of tank cars which obstructed the view of a crossing is not a hazard which the Secretary took into consideration when determining train speed limits under the FRSA." 861 S.W.2d at 510. Other courts, while recognizing the exception, have interpreted it cautiously, limiting it to particular immediate conditions of danger. In *Armstrong v. Atchison, Topeka & Santa Fe Ry. Co.,* 844 F.Supp. 1152 (W.D.Tex. 1994), the court held that the "specific, individual hazard" identified by *Easterwood* relates to the avoidance of a specific collision, not the failure to slow or stop while approaching a dangerous grade crossing in a high traffic area. In *Herriman v. Conrail, Inc.,* 883 F.Supp. 303, 307 (N.D.Ind.1995), excessive speed claims were rejected where there was low visibility due to the glare of artificial lights continuously present at a crossing. In *O'Bannon v. Union Pacific R.R. Co.,* 960 F.Supp. 1411, 1421 (W.D.Mo.1997), the court stated that "courts considering the issue have ruled that a 'specific individual hazard' must be a discrete and truly local hazard, such as a child standing on the railway. They must be aberrations which the Secretary could not have practically considered when determining train speeds limits under the FRSA." (Numerous cita-

tions omitted). In *Beausoleil v. National R.R. Passenger Corp.,* 145 F.Supp.2d 119 (D.Mass.2001), the court elaborated that a "specific hazard" would include "a trespasser seen or otherwise known to the operator of the train to be on the tracks at a particular time. It does not include general knowledge of a chronically dangerous condition." *Id.* at 121.

We turn then to the question whether Herndon has alleged facts that would bring him within the *Easterwood* exception. We look to the material facts in dispute provided by Herndon in his opposition to summary judgment, as set forth above. Four deposition excerpts are annexed to support the asserted facts. The statements of Earl Karper and Herndon indicate the track at milepost 97 was a condition that was well known among conductors and engineers and about which Amtrak had received complaints at unspecified times. Jerry Carter stated that this portion of the track had been a problem some months before the Herndon incident which required a temporary speed reduction because of a kink in the track. William Broadus' testimony reiterates that the condition was ongoing as he had taken measures over the duration of his career to correct the ride by lowering the speed. Broadus acknowledged that there never appeared to him to be "any sort of [visible] abnormality or defect or condition on the track that may have accounted for what [he] experience[d] as a rough ride." No assertion was made that, for example, some recent defect requiring repair and a consequent temporary slackening of train speed had arisen of which Amtrak should have been aware.[2] We think that the entire thrust of Herndon's proffered evidence

---

**2.** Herndon's complaint alleged generally that Amtrak had failed to inspect, detect, and repair defects on the track, but no specific facts are provided to support this assertion with respect to a recent non-endemic hazard. Herndon acknowledged at oral argument that Amtrak did regular maintenance on the track.

indicates that any problem at milepost 97 was not a particularized immediate defect or hazard of the track, but at most an endemic long-term condition deemed to be reflected in the speed limit under the FRSA. Even taking the facts in the light most favorable to appellant, as we must do, we are unable to discern any facts proffered by Herndon which would show the cause of his injury to fall within the *Easterwood* exception.

We must conclude that Herndon's claims are barred by the FRSA. Accordingly the order of the trial court granting summary judgment in favor of Amtrak is

*Affirmed.*