307 Ga. 566
FINAL COPY

S19G0008.  NORFOLK SOUTHERN RAILWAY COMPANY v.
HARTRY et al.

BETHEL, Justice.

We granted certiorari in this case to consider whether Winford

Hartry's claim under the Federal Employers' Liability Act ("FELA"),

45 USC § 51 et seq., is precluded by regulations issued pursuant to

the Federal Railroad Safety Act ("FRSA"), 49 USC § 20101 et seq.

Because we conclude that FRSA and its regulations do not preclude

Hartry's FELA claim, we affirm the decision of the Court of Appeals.

1.  Viewed in the light most favorable to the plaintiffs as the

nonmoving party on a motion for summary judgment, the

underlying facts, as the Court of Appeals presented them, are as

follows:

> The record shows that on June 16, 2010, crossing
> gates were down at a public railway-roadway crossing,
> which position normally indicates that a train is
> approaching the crossing; occasionally gates will be down
> if a railway is performing maintenance or if they are
> malfunctioning.   As [Marvin Ronald Johnson, Jr.]

approached the railroad crossing driving his 28-foot-long truck with attached dumpster, he saw that the gates were down but cars were driving around the gates and over the crossing. Johnson followed suit, driving around the crossing gates into the path of an oncoming train on which [Winford] Hartry was serving as engineer. Hartry was injured as a result of the collision.

Witnesses in the area averred that the crossing gates were down by at least 9:00 a.m. on June 15, 2010 (the day before the accident), and because they were down without trains crossing, drivers were traversing the crossing despite the gates being down. A delivery driver averred that he had traversed the crossing at least 15 to 20 times over the course of June 15 and 16 while the gates were down and prior to the accident. Johnson had traversed the crossing in spite of the warning gates being down a number of times since 4:00 p.m. on June 15 without incident.

[Norfolk Southern Railway Company] employees also worked in the area of the crossing on two occasions during the day on June 15 and were in the vicinity for several other hours of the day during which other witnesses testified that the gates were staying down and signaling without trains actually approaching during that time. The employees contended, however, that they did not witness any malfunctions.

*Hartry v. Ron Johnson Jr. Enterprises, Inc.*, 347 Ga. App. 55, 56 (815 SE2d 611) (2018).

Hartry and his wife, Geraldine, brought suit against Johnson, alleging claims of negligence, loss of consortium, bad faith, and

punitive damages under Georgia law. Hartry also brought claims against Norfolk Southern under FELA for violations of that Act, ultimately focusing on his allegation that Norfolk Southern was responsible for maintaining the crossing gates, which dangerously malfunctioned, resulting in Norfolk Southern's failure to provide Hartry with a reasonably safe place to work. See *Hartry*, 347 Ga. App. at 55.

Norfolk Southern moved for summary judgment on this FELA claim, which the trial court granted on the basis that Hartry's FELA claim was precluded by regulations promulgated under FRSA by the Federal Railroad Authority ("FRA"). Thereafter, the case proceeded to a jury trial on the state-law claims in which the jury returned a verdict for the Hartrys.

Following the conclusion of the case, the Hartrys appealed, arguing that the trial court erred in granting summary judgment to Norfolk Southern after determining that Hartry's FELA claim was precluded by the FRSA regulations and in determining that no question of fact existed as to whether Norfolk Southern had notice

3

of a gate malfunction.  The Court of Appeals agreed with the Hartrys that the trial court erred in determining that Hartry's FELA claim against Norfolk Southern was precluded by the FRSA regulations and in determining that questions of fact did not exist as to the claims.  See *Hartry*, 347 Ga. App. at 58-65 (1) (b).

2.  We granted certiorari and asked whether Hartry's FELA claim is precluded by the regulations under FRSA.  Norfolk Southern argues that its duty was controlled by 49 CFR § 234.107, promulgated by the FRA under FRSA, which lays out the actions to be taken after a railway receives a "credible report" of a crossing malfunction, and that because there was no "credible report" as defined under that regulation, Hartry's FELA claim was precluded. We disagree.

(a) *FELA*.

Enacted in 1908, FELA provides railroad employees with a federal cause of action for injuries "resulting in whole or in part from the negligence" of a railroad.  45 USC § 51.  "Cognizant of the physical dangers of railroading that resulted in the death or

4

maiming of thousands of workers every year, Congress crafted a federal remedy that shifted part of the human overhead of doing business from employees to their employers." (Citation and punctuation omitted.) *Consolidated Rail Corp. v. Gottshall*, 512 U. S. 532, 542 (II) (A) (114 SCt 2396, 129 LE2d 427) (1994). "In order to further FELA's humanitarian purposes, Congress did away with several common-law tort defenses that had effectively barred recovery by injured workers." Id. What constitutes negligence under FELA is a federal question governed by the provisions of the statute and federal common law. See id. at 543 (II) (A).

(b) *FRSA.*

FRSA was enacted in 1970 "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 USC § 20101. FRSA grants the Secretary of Transportation the authority to "prescribe regulations and issue orders for every area of railroad safety supplementing laws and regulations in effect on October 16, 1970," 49 USC § 20103 (a), "which laws include FELA." *Norfolk Southern R. Co. v. Zeagler*, 293

5

Ga. 582, 597-598 (3) (748 SE2d 846) (2013). The Secretary of Transportation has delegated this authority to the FRA. See id.; *Henderson v. Nat. R. Passenger Corp.*, 87 FSupp.3d 610, 613 (II) (A) (S.D. N.Y. 2015). FRSA does not create a private right of action; enforcement powers under the statute are vested solely with the Secretary of Transportation and, under certain conditions, the States or the Attorney General.[1] See 49 USC §§ 20111-20113.

(c) *Preemption under FRSA.*

To maintain uniformity, FRSA contains an express preemption clause, pursuant to which "[a] State may adopt or continue in force a law, regulation, or order related to railroad safety . . . until the Secretary of Transportation . . . prescribes a regulation or issues an order covering the subject matter of the State requirement." 49 USC § 20106 (a) (2). FRSA regulations preempt covered state law tort claims, in addition to covered state statutes and regulations. See *CSX Transp. v. Easterwood*, 507 U. S. 658, 670-671 (II) (113 SCt

---

[1] Railroad employees may also file an action compelling the Secretary of Transportation to issue a safety regulation. See 49 USC § 20104 (c). Such relief is not sought here.

6

1732, 123 LE2d 387) (1993). Indeed, "[t]he preemption doctrine is a product of the Supremacy Clause, see U. S. Const., Art. VI, Cl. 2, which invalidates state laws that interfere with, or are contrary to, federal law." (Citation and punctuation omitted.) *Zeagler*, 293 Ga. at 598 (3) (a). A FRSA regulation covers and thus preempts a state law tort claim if the regulation "substantially subsume[s] the subject matter" of that claim. *Easterwood*, 507 U. S. at 664 (I). However, FRSA does not preempt state law claims that allege a party "has failed to comply with the Federal standard of care established by a regulation or order issued by the [FRA]" or "has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order issued by" the FRA. 49 USC §20106 (b) (1) (A), (B). Because this case concerns two federal acts, the preemption doctrine and the express preemption provision in FRSA are inapplicable. See *Zeagler*, 293 Ga. at 598 (3) (a); *Henderson*, 87 FSupp.3d at 614 (II) (B).

(d) *Preclusion*.

"If FRSA regulations were to bar a FELA negligence claim, it

7

could only be under the doctrine of preclusion, which deals with the compatibility of multiple federal laws." *Zeagler*, 293 Ga. at 598 (3) (a). While FRSA contains an express preemption provision of state law claims, there is not a similar provision pertaining to preclusion, and nothing in the statute directly addresses the effect of the federal statute on federal claims that are brought under FELA. See *POM Wonderful v. Coca-Cola Co.*, 573 U. S. 102, 112 (II) (A) (134 SCt 2228, 189 LE2d 141) (2014) (applying "traditional rules of statutory interpretation" in determining that the express terms of the federal statutes at issue did not provide for preclusion). This Court cannot "rewrite the express statutory language" of FRSA by reading the provisions preempting state law claims to also preclude covered federal claims under FELA. *Henderson*, 87 FSupp.3d at 616 (II) (B).

In arguing that Hartry's FELA claim is precluded by FRSA and its regulations, Norfolk Southern relies on FRSA's goal of ensuring that "[l]aws, regulations, and orders related to railroad safety . . . shall be nationally uniform to the extent practicable." 49 USC § 20106 (a) (1). But this provision, which comes from the section that

8

expressly concerns preemption of state laws, does not resolve the question before us. "Congress not infrequently permits a certain amount of variability by authorizing a federal cause of action even in areas of law where national uniformity is important." *POM Wonderful*, 573 U. S. at 117 (II) (C). "What is more, given the breadth of FELA's statutory language, its humanitarian purposes, and its accepted standard of liberal construction in order to accomplish those objects, it should not be cut down by inference or implication." (Citations and punctuation omitted.) *Hananburgh v. Metro-North Commuter R.*, 2015 WL 1267145 at \*4 (C) (S.D. N.Y. Mar. 18, 2015). This is especially true where doing so would leave railroad workers with no legal recourse. See id. Further, FRSA contains no mention of its effect on FELA, and the statutes have now existed together for nearly 50 years. "If Congress had concluded, in light of experience, that FELA suits would interfere with the operation of FRSA, Congress certainly could have enacted a provision addressing the issue during these statutes' . . . years of co-existence." *Madden v. Anton Antonov & AV Transp.*, 156 FSupp.3d

9

1011, 1021 (III) (A) (D. Neb. 2015). Finally, because FELA claims are based on federal statute and federal common law regardless of the jurisdiction where they are tried and the Supreme Court's mandate that FELA be given a "uniform application throughout the country," FELA's application should comport with the stated goal of uniformity. See *Dice v. Akron, Canton & Youngstown R. Co.*, 342 U. S. 359, 361 (72 SCt 312, 96 LE 398) (1952).

This Court previously recognized in *Zeagler* that "the law regarding preclusion of FELA claims by FRSA regulations is somewhat unsettled." 293 Ga. at 598 (3) (b). In that case, which predated *POM Wonderful*, we rejected Norfolk Southern's preclusion claim without deciding how the claim should be analyzed. We granted certiorari to decide the issue in light of the analysis presented in *POM Wonderful*.

(e) *FRSA regulations do not preclude FELA.*

Before *POM Wonderful*, many courts across the nation held that FRSA regulations preclude a FELA claim, relying on the type of reasoning set forth in *Easterwood*, supra, which dealt with

10

preemption, rather than preclusion. See, e.g., *Nickels v. Grand Trunk Western R.*, 560 F3d 426, 430 (III) (A) (6th Cir. 2009) (holding that a FRSA regulation precluded FELA claims); *Lane v. R. A. Sims, Jr., Inc.*, 241 F3d 439, 443 (II) (A) (5th Cir. 2001) (same); *Waymire v. Norfolk and Western R. Co.*, 218 F3d 773, 774-775 (I) (7th Cir. 2000) (same); *Allenbaugh v. BNSF R. Co.*, 832 FSupp.2d 1260, 1266 (II) (C) (E.D. Wash. 2011) ("If a cause of action would be preempted by the FRSA if brought under state law, the cause is likewise precluded by the FRSA if it is brought under the FELA."); *Abromeit v. Montana Rail Link*, 2010 WL 3724425, at *4 (IV) (C) n.2 (D. Mont. Sept. 15, 2010) (noting that while preemption analysis only applies to conflicts between state and federal law, courts have concluded FELA claims may be precluded under a similar analysis based on FRSA's policy of ensuring uniformity in railway safety). See also *Booth v. CSX Transp.*, 334 SW3d 897, 900 (Ky. Ct. App. 2011); *DeHahn v. CSX Transp.*, 925 NE2d 442, 451 (I) (C) (Ind. Ct. App. 2010); *Hendrix v. Port Terminal R. Assn.*, 196 SW3d 188, 195 (Tex. Ct. App. 2006); *CSX Transp. v. Miller*, 858 A2d 1025, 1049 (Md. Ct.

11

Spec. App. 2004); *Elston v. Union Pac. R. Co.*, 74 P3d 478, 486 (II) (A) (Colo. Ct. App. 2003); *Herndon v. Nat. R. Passenger Corp.*, 814 A2d 934, 937 (B) (D.C. 2003).

Since *POM Wonderful*, however, most courts not bound by FELA precedent that precedes *POM Wonderful* have held that FRSA does not preclude a FELA claim. See, e.g., *Cottles v. Norfolk Southern R. Co.*, 224 S3d 572, 592 (III) (Ala. 2016) (holding that regulations promulgated under FRSA did not preclude a FELA claim); *Noice v. BNSF R. Co.*, 383 P3d 761, 764-771 (II) (N.M. 2016) (same); *Fair v. BNSF R. Co.,* 189 Cal. Rptr. 3d 150, 159-165 (II) (Cal. Ct. App. 2015) (same); *Henderson*, 87 FSupp.3d at 613-619 (II) (same); *Madden*, 156 FSupp.3d at 1019-1022 (III) (A) (same); *Hananburgh*, 2015 WL 1267145 at *3-4 (C) (C); *Bratton v. Kansas City Southern R. Co.*, 2015 WL 789127, at *1-2 (W.D. La. Feb. 24, 2015) (same).

In *POM Wonderful*, the Supreme Court held that the Food, Drug, and Cosmetic Act ("FDCA") did not preclude a private party from bringing a Lanham Act claim challenging as misleading a food

12

label that was regulated by FDCA. See 573 U. S. at 113 (II) (B). The Supreme Court found that preclusion did not apply, as there was no statutory text or established interpretive principle to support preclusion, nothing relating to either statute showed a congressional purpose or design to forbid such suits, and to the contrary, the statutes complemented each other in the federal regulation of misleading food and beverage labels. Id. at 106. Our Court of Appeals relied on *POM Wonderful* in determining that Hartry's FELA claim is not precluded by FRSA. We agree with the well-reasoned conclusion of our intermediate appellate court, and with the reasoning of the more recent post-*POM Wonderful* decisions from other courts.[2]

> When two federal statutes address the same subject in different ways, the right question is whether one implicitly repeals the other through an irreconcilable

---

[2] The necessary result of our holding is that *Norris v. Central of Ga. R. Co.*, 280 Ga. App. 792 (635 SE2d 179) (2006), and *Key v. Norfolk Southern R. Co.*, 228 Ga. App. 305 (491 SE2d 511) (1997), which both rely on reasoning typically used to determine preemption, are overruled. In *Norris*, the Court of Appeals held that a FRSA regulation precluded a railroad employee's FELA claim asserting that the railroad should have used smaller ballast. In *Key*, the Court of Appeals held that compliance with FRA safety regulations regarding built-in steps preempted FELA claim by a train engineer.

> conflict between the statutes or a clearly expressed legislative decision that one replace the other. When two federal statutes may be interpreted harmoniously, a court must interpret them in a manner which gives operation and effect to both, in the absence of clear and unambiguous expression of Congressional intent to the contrary.

(Citations and punctuation omitted.) *Noice v. BNSF R. Co.*, 348 P3d 1043, 1047 (II) (B) (N.M. Ct. App. 2015). See also *Morton v. Mancari*, 417 U. S. 535, 551 (III) (94 SCt 2474, 41 LE2d 290) (1974) ("[C]ourts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.").

While there is some overlap between the scope and purpose of FRSA and FELA — as both are directed to railroad safety — the statutory schemes approach each of their purposes from significantly different perspectives. The regulations promulgated under FRSA are the "minimum safety requirements for railroad track that is part of the general railroad system." 49 C. F. R. § 213.1 (a). FRSA's purpose—"to promote safety in every area of railroad

14

operations and reduce railroad-related accidents and incidents, 49 USC § 20101—is entirely consistent with FELA's goal of promoting the safety of railroad employees by facilitating their ability to recover for injuries caused by a railroad's negligence." (Punctuation omitted.) *Henderson*, 87 FSupp.3d at 616 (II) (B). See also *Earwood v. Norfolk Southern R. Co.*, 845 FSupp. 880, 885 (I) (B) (N.D. Ga. 1993) ("Neither the [FRSA] nor the regulations purport to define the standard of care with which railroads must act with regard to employees. There is clearly no 'intolerable conflict' between the two statutes."). Where two statutes are complementary and neither expressly forbids or limits claims under the other, "it would show disregard for the congressional design to hold that Congress intended one federal statute nonetheless to preclude the operation of the other." *POM Wonderful*, 573 U. S. at 115 (II) (B). Here, FRSA and FELA "complement each other in major respects, for each has its own scope and purpose." Id.

"[A]llowing FELA suits 'takes advantage of synergies among multiple methods of regulation' and is consistent with 'the

congressional design to enact two different statutes, each with its own mechanisms to enhance' railroad safety." *Madden*, 156 FSupp.3d at 1021 (III) (A) (quoting *POM Wonderful*, 573 U. S. at 115-116 (II) (B)). Permitting safety-related suits under FELA will enhance, rather than impede, the purpose of FRSA in promoting railroad safety and reducing accidents. See id. at 1020 (III) (A). Further, a railroad's conduct may comply with FRSA regulations, yet still fall below the level of ordinary care expected of a reasonable person. See id. at 1020-1021 (III) (A).

> And at least as to railroad employees, FELA suits serve to ferret out such situations that might otherwise evade the attention of regulators or that are less amenable to uniform, regulatory solutions. This enhances safety by providing additional incentives for railroads to conduct their operations safely.

Id. at 1021 (III) (A).

"Although the application of a federal statute by judges and juries in courts throughout the country may give rise to some variation in outcome, this is the means Congress chose to enforce a national policy—in this case, to provide liberal recovery for injured

16

railroad workers." (Citation and punctuation omitted.) *Henderson*, 87 FSupp.3d at 621 (II) (B); *Madden*, 156 FSupp.2d at 1020 (III) (A) ("FRSA was not created to provide uniformity for the sake of uniformity."). See also *Noice*, 383 P3d at 770 (II) (E). Moreover, because FELA claims are based on federal statute and federal common law regardless of where such claims are tried, there is no danger that the applicable law will be anything but uniform, unlike those cases asserting state law claims, which may be preempted.

As FRSA and its regulations do not preclude Hartry's FELA claim, we affirm the decision of the Court of Appeals.

*Judgment affirmed. All the Justices concur, except Peterson, J., disqualified.*

DECIDED DECEMBER 23, 2019.
Certiorari to the Court of Appeals of Georgia — 347 Ga. App. 55.

*Hall, Bloch, Garland & Meyer, Eileen M. Crowley, Amanda R. Smith; Holland & Knight, Laurie W. Daniel, Matthew D. Friedlander; Sidley Austin, Virginia A. Seitz, Tobias S. Loss-Eaton, Raymond A. Atkins*, for appellant.

*Warshauer Law Group, Michael J. Warshauer, Lyle G. Warshauer, Trent S. Shuping; Carlock Copeland & Stair, Richard C. Foster, Elizabeth L. Bentley; Bondurant, Mixson & Elmore, Frank M. Lowrey IV, Michael R. Baumrind*, for appellees.

*Hunter Maclean Exley & Dunn, Christopher R. Jordan; Kathryn D. Kirmayer, Daniel Saphire; Burge & Burge, Frank T. Burge, Sr.; Alpers & Mann, Lawrence M. Mann*, amici curiae.