# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #048

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **24th day of October, 2025** are as follows:

**BY McCallum, J.:**

2024-C-01564    SEAN VAN BUREN   VS.   KANSAS CITY SOUTHERN RAILWAY COMPANY (Parish of Caddo)

REVERSED AND REMANDED. SEE OPINION.

SUPREME COURT OF LOUISIANA

No. 2024-C-01564

SEAN VAN BUREN

VS.

KANSAS CITY SOUTHERN RAILWAY COMPANY

On Writ of Certiorari to the Court of Appeal, Second Circuit, Parish of Caddo


**McCALLUM, J.**

This case raises the issue of federal preclusion; more specifically, whether 49 C.F.R. § 213.103, promulgated under the Federal Railroads Safety Act ("FRSA"), setting forth the minimum requirements for railroad ballast, precludes petitioner's suit filed pursuant to the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51-60, that provides the exclusive remedy for railroad employees asserting workplace injury claims against their railroad employers. The lower courts, finding the FELA claim precluded, granted summary judgment, dismissing petitioner's suit. Joining the majority of courts applying *Pom Wonderful LLC v. Coca-Cola, Co.*, 573 U.S. 102, 134 S. Ct. 2228, 189 L. Ed. 2d 141 (2014), we find the FRSA does not preclude a FELA action. We therefore reverse the lower courts' grant of summary judgment and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

This suit involves a petition for personal injuries filed by Sean Van Buren ("Van Buren") against his employer, the Kansas City Southern Railway Company ("KCS"). At the time he was injured, Van Buren was a carman, a position involving inspecting, maintaining, and repairing railcars. Van Buren alleged KCS improperly maintained ballast under the railway tracks where he was repairing a railcar. Van Buren asserted the ballast for Tracks 46 and 47 gave way beneath him and caused

him to fall and injure his back and spine. Ballast, in the context of this case, is the rock upon which the railroad ties are laid, forming the track bed.[1]

KCS denied Van Buren's allegations and asserted that 49 C.F.R. § 213.103 precluded Van Buren's FELA action. KCS filed a motion for summary judgment on that basis. To support its preclusion argument, KCS cited several cases from federal circuit courts. KCS further argued no genuine issues of material fact exist to preclude summary judgment, and that Van Buren could not establish competent evidence showing KCS inadequately maintained the ballast or failed to comply with FRSA regulations. In support of its motion, KCS attached the depositions of Van Buren and his co-worker, Samuel Jamison, along with the affidavit of David W. Brookings, a civil engineer.

Van Buren opposed KCS' motion, attaching numerous depositions of KCS co-workers and managers to support his claim the company did not properly maintain Tracks 46 and 47. Van Buren noted a prior injury occurred on the same tracks, and despite numerous employee complaints about the ballast and walking conditions, KCS failed to address the employees' concerns. Regarding preclusion, Van Buren asserted that more recent jurisprudence showed a judicial trend towards finding the FRSA does not preclude a FELA action.

The trial court granted KCS' motion for summary judgment, ruling on the legal issue presented and finding that the FRSA precluded Van Buren's FELA suit. On appeal, noting Van Buren largely sought review of the trial court's ruling on the issue of preclusion, the appellate court found it was ultimately "constrained to agree" with the argument advanced by KCS. It therefore affirmed the trial court's

---

[1] As discussed in more depth below, federal regulations mandate the minimum conditions for ballast. 49 C.F.R. § 213.101, *et seq.*, "prescribes minimum requirements for ballast, crossties, track assembly and the physical conditions of rails." 49 C.F.R. § 213.103 specifically addresses ballast.

judgment. Van Buren filed a writ application which we granted. *Van Buren v. Kansas City S. Ry. Co.*, 2024-01564 (La. 04/01/25), 403 So. 3d 597.

## DISCUSSION

"The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends." La. C.C.P. art. 966 A (2). "After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966 A (3). In Article 966, the Legislature provided a clear procedure, and it included an unambiguous factual requirement in order to grant a motion for summary judgment. To ensure we follow the mandated criteria, we review summary judgments *de novo*. *23rd Psalm Trucking, L.L.C. v. Madison Par. Police Jury*, 2024-00808, pp. 5-6, (La. 06/27/25), 413 So. 3d 370, 375, *reh'g denied*, 2024-00808 (La. 09/04/25).

### *PRECLUSION*

This case was resolved on an issue of law which requires us to interpret and examine the interplay between the FELA[2] and the FRSA, specifically 49 C.F.R. § 213.103.[3] Van Buren asserts the lower courts erred in not applying the United States

---

[2] The FELA provides railroad employees the exclusive remedy against their railroad employers "for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." 45 U.S.C. § 51.

[3] Titled "Ballast; general," 49 C.F.R. § 213.103 provides:

> Unless it is otherwise structurally supported, all track shall be supported by material which will —
>
> (a) Transmit and distribute the load of the track and railroad rolling equipment to the subgrade;
> (b) Restrain the track laterally, longitudinally, and vertically under dynamic loads imposed by railroad rolling equipment and thermal stress exerted by the rails;
> (c) Provide adequate drainage for the track; and
> (d) Maintain proper track crosslevel, surface, and alinement.

Supreme Court's recent decision in *Pom Wonderful*. He argues *Pom Wonderful* significantly altered the approach courts use to analyze federal preclusion, and post-*Pom Wonderful*, courts have significantly shifted toward finding the FRSA does not preclude FELA suits. He urges this Court to apply *Pom Wonderful* and find that the FRSA does not preclude FELA actions.

We begin our discussion with KCS' argument that the FRSA precludes Van Buren's FELA action. KCS asserts the FRSA and the federal regulation in question clearly subsume the field of ballast regulation. KCS notes the language of 49 U.S.C. § 20101 that "[t]he purpose of this chapter is to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." KCS further cites the preemption provision, 49 U.S.C. § 20106 (a):

> National uniformity of regulation.--(1) Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable.

KCS argues these provisions clearly contemplate preclusion, as their enactment is meant to prevent inconsistent railroad regulation. On that point, KCS cites *Norfolk S. Ry. Co. v. Shanklin*, 529 U.S. 344, 352, 120 S. Ct. 1467, 1473, 146 L. Ed. 2d 374 (2000) ("Thus, 'pre-emption will lie only if the federal regulations substantially subsume the subject matter of the relevant state law.'") (quoting *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664, 113 S. Ct. 1732, 123 L. Ed. 2d 387 (1993)). KCS contends that, although this is a preclusion case, the principles for pre-emption apply. *Nickels v. Grand Trunk W.R.R., Inc.*, 560 F. 3d 426, 429-30 (6th Cir. 2009); *see also Pom Wonderful*, 573 U.S. at 111-12 ("Although the Court's pre-emption precedent does not govern preclusion analysis in this [preclusion] case its principles are instructive insofar as they are designed to assess the interaction of laws that bear on the same subject.").[4]

---

[4] Pre-emption pertains to a federal law or regulation pre-empting a state law. Preclusion concerns the effect of one federal statute as relates to another federal statute. *See Pom Wonderful*, 573 U.S. at 111.

KCS relies heavily on *Nickels*, arguing the Sixth Circuit thoroughly examined the FRSA's preclusive effect in FELA cases. In *Nickels*, the claimants alleged the defendant's years of continued use of large mainline ballast instead of smaller yard ballast caused their injuries. *Nickels*, 560 F. 3d at 428. The court agreed with the holdings on preclusion provided by two sister circuits:

> Two of our sister circuits have held that the uniformity demanded by the FRSA "can be achieved only if [federal rail safety regulations] are applied similarly to a FELA plaintiff's negligence claim and a non-railroad-employee plaintiff's state law negligence claim." *Lane v. R.A. Sims, Jr., Inc.*, 241 F.3d 439, 443 (5th Cir. 2001); *see also Waymire v. Norfolk & W. Ry. Co.*, 218 F.3d 773, 776 (7th Cir. 2000).
>
> "Dissimilar treatment of the claims would have the untenable result of making the railroad safety regulations established under the FRSA virtually meaningless: 'The railroad could at one time be in compliance with federal railroad safety standards with respect to certain classes of plaintiffs yet be found negligent under the FELA with respect to other classes of plaintiffs for the very same conduct.'"

*Nickels*, 560 F. 3d at 430 (quoting *Lane*, 241 F. 3d at 443 and *Waymire v. Norfolk & W. Ry. Co.*, 65 F. Supp. 2d 951, 955 (S. D. Ind. 1999), *aff'd*, 218 F. 3d 773 (7th Cir. 2000)). The *Nickels* court observed that although *Lane* and *Waymire* addressed FELA claims of unsafe train speed in light of FRSA train speed regulations, "the FRSA's concern for uniformity leads us to reach the same conclusion regarding ballast regulations." *Id.* Finding the FRSA subsumed the field of ballast regulation, *Nickels* concluded the FRSA precluded a FELA ballast action. *Id.*[5]

---

[5] KCS further cites several lower federal courts and some state courts that later adopted *Nickels'* reasoning, some of which include: *Harrison v. BNSF Ry. Co.*, 508 S. W. 3d 331, 339 (Tex. App. 2014) ("We hold that the size and composition of track ballast is substantially subsumed by § 213.103's track-support requirements because the size and composition of the ballast unquestionably affect the extent to which the regulation's support, restraint, drainage, and alignment requirements are achieved at a given location."); *Lybrand v. Union Pac. R. Co.*, 2012 WL 1436690, at *3 (E.D. Ark. Apr. 25, 2012) ("Based on the facts and evidence submitted, the Court finds that Plaintiff's claims regarding the size and slope of the ballast are precluded by FRSA. The evidence shows that the Plaintiff fell in an area immediately adjoining the track. The [Federal Railroad Administration] has substantially subsumed the field of ballast regulation in this area."); and *Cowden v. BNSF Ry. Co.*, 975 F. Supp. 2d 1005, 1015 (E.D. Mo. 2013) ("The Court agrees with Defendant that § 213.103 substantially subsumes Plaintiff's inadequate ballast claims.").

Van Buren asserts that after *Nickels*, *Pom Wonderful* significantly altered the analysis for preclusion cases. In *Pom Wonderful*, the United States Supreme Court considered whether a Food, Drug, and Cosmetic Act ("FDCA") regulation precluded Pom Wonderful, LLC's Lanham Act claim against The Coca-Cola Company, alleging unfair competition through the deceptive labeling of a drink product. Coca-Cola argued that because the FDCA prohibits the false or misleading labeling of food and drink, permits the Food and Drug Administration to promulgate regulations regarding such labels, provides for near exclusive enforcement of the FDCA by the federal government, and included an express pre-emption clause, then the Act precluded Pom Wonderful's claim based on similar issues. Coca-Cola also asserted the FDCA was a more specific law, and therefore, it clarified or narrowed the scope of the more general law, the Lanham Act. Pom Wonderful countered, arguing the case centered on whether one law was an implied repeal of the other, and that the Court must give full effect to both statutes unless they are in "irreconcilable conflict." *Pom Wonderful*, 573 U.S. at 112.

The Supreme Court, rejecting Coca-Cola's arguments, found the two acts complementary as each held its own scope and purpose. *Pom Wonderful*, 573 U.S. at 115. The Court first observed that the issue was one of preclusion, not pre-emption. *Id.*, 573 U.S. at 111. It then explained the case involved statutory interpretation:

> [T]his is a statutory interpretation case and the Court relies on traditional rules of statutory interpretation. That does not change because the case involves multiple federal statutes. Nor does it change because an agency is involved. Analysis of the statutory text, aided by established principles of interpretation, controls.

*Id.*, 573 U.S. at 112 (internal citations omitted). In reviewing the two acts, the Court found "the FDCA, by its terms, does not preclude Lanham Act suits." *Id.*, 573 U.S. at 113. The Court explained:

6

This absence is of special significance because the Lanham Act and the FDCA have coexisted since the passage of the Lanham Act in 1946. If Congress had concluded, in light of experience, that Lanham Act suits could interfere with the FDCA, it might well have enacted a provision addressing the issue during these 70 years. Congress enacted amendments to the FDCA and the Lanham Act, *see, e.g.*, Nutrition Labeling and Education Act of 1990, 104 Stat. 2353; Trademark Law Revision Act of 1988, § 132, 102 Stat. 3946, including an amendment that added to the FDCA an express pre-emption provision with respect to state laws addressing food and beverage misbranding, § 6, 104 Stat. 2362. Yet Congress did not enact a provision addressing the preclusion of other federal laws that might bear on food and beverage labeling. This is "powerful evidence that Congress did not intend FDA oversight to be the exclusive means" of ensuring proper food and beverage labeling.

*Id.*, 573 U.S. 113–14 (internal citations omitted). The Court went further, holding that "[w]hen two statutes complement each other, it would show disregard for the congressional design to hold that Congress nonetheless intended one federal statute to preclude the operation of the other." *Id.*, 573 U.S. at 115.

We agree with the analysis set forth in *Pom Wonderful* and find the FELA and the FRSA to be complementary. We thus join the majority of state and federal courts that have applied the Court's reasoning post-*Pom Wonderful*, to find the FRSA does not preclude FELA actions. For example, *Madden v. Anton Antonov & AV Transportation, Inc.*, 156 F. Supp. 3d 1011 (D.C. Neb. 2015), found:

This Court is not persuaded by the reasoning of *Waymire* or its progeny, and respectfully declines to follow suit. Neither the plain text of FRSA nor its goal of national uniformity demand preclusion of FELA claims. Rather, the text of FRSA and the purposes underlying both it and FELA demand the opposite. The *Waymire* line of precedent elevates uniformity at the expense of safety, but that is not the balance Congress has struck. By its plain terms, FRSA's pre-emption provision applies only to certain state-law requirements, not FELA or any other federal law.

More recently, a number of other state Supreme Courts, including Georgia, Alabama, and New Mexico, have found the FRSA does not preclude FELA actions. In *Norfolk S. Ry. Co. v. Hartry*, 307 Ga. 566, 568, 837 S.E.2d 303, 306 (2019), the Georgia Supreme Court considered whether regulations promulgated pursuant to the FRSA, specifically ones pertaining to a railway receiving a "credible report" of a

7

crossing malfunction, precluded a FELA claim alleging negligence because of a crossing malfunction. The Court recognized the jurisprudential movement toward finding the FRSA does not preclude FELA actions:

> Since *POM Wonderful*, however, most courts not bound by FELA precedent that precedes *POM Wonderful* have held that FRSA does not preclude a FELA claim.
>
> … Our Court of Appeals relied on *POM Wonderful* in determining that Hartry's FELA claim is not precluded by FRSA. We agree with the well-reasoned conclusion of our intermediate appellate court, and with the reasoning of the more recent post-*POM Wonderful* decisions from other courts.
>
> …
>
> While there is some overlap between the scope and purpose of FRSA and FELA – as both are directed to railroad safety – the statutory schemes approach each of their purposes from significantly different perspectives. The regulations promulgated under FRSA are the "minimum safety requirements for railroad track that is part of the general railway system." FRSA's purpose – "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents, 49 USC § 20101 – is entirely consistent with FELA's goal of promoting the safety of railroad employees by facilitating their ability to recover for injuries caused by a railroad's negligence." Where two statutes are complementary and neither expressly forbids or limits claims under the other, "it would show disregard for the congressional design to hold that Congress intended one federal statute nonetheless to preclude the operation of the other." Here, FRSA and FELA "complement each other in major respects, for each has its own scope and purpose."

*Norfolk v. Hartry*, 307 Ga. at 570-72 (internal citations omitted); *see also*, *Cottles v. Norfolk Southern R. Co.*, 224 So. 3d 572, 592 (Ala. 2016) (agreeing with other recent decisions applying *Pom Wonderful* to FRSA/FELA cases and holding that regulations enacted under the FRSA do not preclude a FELA claim); *Noice v. BNSF R. Co.*, 383 P. 3d 761, 771 (N.M. 2016) ("[W]e conclude that FRSA and FELA are complementary in purpose and effect. Both statutes further railroad safety in meaningfully distinct ways. FRSA seeks to enhance safety in every area of railroad operation, and to protect the public as well as railroad workers. It does so with national, comprehensive regulatory standards which are enforced by government entities. FELA, by comparison, focuses solely on the safety of railroad workers, and

8

does so by providing railroad employees a private right of action.") (internal citations omitted); *Fair v. BNSF R. Co.*, 238 Cal. App. 4th 269, 189 Cal. Rptr. 3d 150 (2015); *Bratton v. Kansas City S. R. Co.*, 2015 WL 789127 (W.D. La. Feb. 24, 2015); and *Rouzer v. CSX Transportation Inc.*, 2025 WL 343514 (Tenn. Ct. App. Jan. 30, 2025).[6]

Having fully evaluated the issue in this case and the respective positions of the parties, we agree with the decisions of the supreme courts in Georgia, Alabama, and New Mexico, along with the other federal and state courts cited herein. We find that *Pom Wonderful* changed the analysis on the issue of preclusion, and applying that analysis to the case before us, we find the FRSA and the FELA are complementary. While the FRSA was enacted to promote general railroad safety, mandating minimum safety requirements for railroad track with the goal of uniform trackage across our nation's vast interstate rail networks, the FELA was enacted for the purpose of promoting the safety of workers by granting them a specific means of recovery for alleged rail company negligence. We also note the two acts have coexisted for 55 years. Like the *Pom Wonderful* Court, we find that such a lengthy period of coexistence without Congress enacting any provisions expressly addressing preclusion is "powerful evidence" that Congress did not intend the FRSA to preclude the FELA. *See Pom Wonderful*, 573 at 114. If Congress intended for one to preclude the other, especially in light of its specific inclusion of a state law pre-emption provision, then it would have expressly so provided. However, through

---

[6] Responding to these more recent decisions, KCS contends they are distinguishable. KCS argues the two Acts before us are not complementary, and "[t]he FRSA's ballast regulation instead dictates that [Van Buren] cannot carry the burden of proving an essential element to his negligence claim[.]" Although KCS correctly points out that these cases are not ballast related, as we discuss in more detail below, we find their analysis useful and persuasive.

KCS further cites cases that have continued to follow *Nickels* and *Waymire*, including: *Wheeler v. CSX Transportation, Inc.*, No. 3:14 CV 2689, 2017 WL 3116701 (N.D. Ohio July 21, 2017); *Spafford v. BNSF Railway Co.*, No. CV 2011-099118, 2016 WL 6560866 (Ariz. Super. Oct. 06, 2016); and *Schendel v. Duluth*, No. 69DUCV132319, 2014 WL 5365131 (Minn. Dist. Ct. Sep. 29, 2014). Notably, these courts either felt bound by *Nickels* or still found it persuasive. However, these decisions do not bind us, and for the reasons, *infra*, we do not find them persuasive.

9

the decades since the FRSA was first enacted, including multiple amendments, Congress has not sought to add language concerning preclusion.[7]

*FACTUAL REVIEW*

KCS additionally asserts that even if preclusion does not apply, summary judgment in its favor is appropriate because Van Buren cannot prove the traditional elements of a FELA negligence claim. KCS argues Van Buren failed to show a genuine issue of material fact as to negligence, and that he relied on self-serving, general complaints about the rail yard, not the specific site of the injury. Citing *Alex v. BNSF Ry. Co.*, 2012-462 (La. App. 3 Cir. 11/07/12), 103 So. 3d 1180, KCS contends self-serving evidence is insufficient to defeat summary judgment. We disagree with KCS' characterization of the evidence.

KCS supported its motion for summary judgment with the depositions of Van Buren and Samuel Jamison, and it heavily relied on the affidavit of their civil engineer expert, David W. Brookings. In opposition, Van Buren cited his own deposition testimony, along with depositions of numerous KCS co-workers and managers.

Mr. Brookings concluded the rail company provided a reasonably safe place to work. He included the following opinions:

> After reviewing the above materials, references, and relying on my years of railway engineering experience which includes visiting railways throughout North America, including Tracks 46 and 47 in the Shreveport Yard, it is my professional opinion, to a reasonably (sic) degree of engineering certainty, that KCS did provide a reasonably safe place to work for Mr. Van Buren on June 2, 2019. The ballast conditions between Track 46 and 47 in Shreveport Yard at the time of

---

[7] In finding the FRSA does not preclude a FELA action, we necessarily determine the specific regulation, promulgated pursuant to the FRSA, also does not preclude Van Buren's suit in this matter. Additionally, in our review of the plain language of 49 C.F.R. § 213.103, it is clear the federal government promulgated the regulation as a minimum standard for ballast with the goal of ensuring the structural soundness and safe functioning of the rails and not necessarily as a standard for employee safety. We are not alone in this determination. *See*, *e.g.*, *Grimes v. Norfolk S. Ry. Co.*, 116 F. Supp. 2d 995, 1002–03 (N.D. Ind. 2000) ("The regulations are directed toward creating a safe roadbed for trains, not a safe walkway for railroad employees who must inspect the trains.") and *DeHahn v. CSX Transp., Inc.*, 925 N.E.2d 442, 450 (Ind. Ct. App. 2010) ("Subsection 213.103 does not mention worker safety or whether ballast should be allowed to remain on crossties; it is instead concerned with ensuring that the railroad's track is structurally sound.").

the incident would not have prevented Mr. Van Buren from safely walking in the vicinity of the railcar. Mr. Van Buren was familiar with this area and had made a similar prior move and had done so safely.

…

[T]he photographs taken after the incident reflect that the area was well maintained.

…

Inspection records for Track 46 indicate there were no defects noted from January thru May 2019.

…

Although all five carmen discussed the changing environment in a railyard with numerous railcars arriving and departing they all testified they had worked in this area of Track 46 and 47 and had done so safely. The only previous injury to a carman walking on ballast was Mr. Gregory Lebrun. I am familiar with Mr. Lebrun's incident and know that extremely heavy rain and a water filled track ditch was the contributing factor. Ballast was not an issue and the incident did not take place anywhere near Track 46 or Track 47.

For carmen with 17-23 years' experience to only remember one other incident of a fellow carman falling is a tribute to the safety mentality of this group and its leadership.

…

KCS violated no [Federal Railroad Administration] regulations.

Samuel Jamison, Van Buren's co-worker working on the opposite side of the track at the time of Van Buren's injury, was deposed. He testified that "[Van Buren] forgot where he was and lost his footing and fell down the slope that's right there." When asked if he had ever fallen or seen Van Buren fall other than the time of the incident, he replied, "No." He further stated he had no concern with the ballast the day of the incident prior to Van Buren's accident. However, he also admitted he had previously complained about the rail yard in general and that co-workers had complained specifically about the tracks where Van Buren was injured. Although he stated he had never fallen before, he did acknowledge he stumbled in the same area of the Van Buren injury and such stumbles were common.

William Luster, a carman for KCS, stated he and other KCS employees complained about the ballast having low and high spots on Tracks 46 and 47. Likewise, Jason Smith, another KCS carman, provided his recollection of complaints made about the walking conditions of Tracks 46 and 47. Jonathan

11

Frazier, who was asked to describe the rail yard conditions, stated: "They needed to be – it needed some attention." He provided his accounts of complaints about Tracks 46 and 47, namely, that the ballast was not uniform. In particular, he indicated that some areas had smaller sized ballast suitable for walking known as "walking chat," while other areas had "big rock." In response to a question as to whether the ballast was packed down, he replied that "[i]n spots it was, and in spots it was kind of loose."

Lamario Ware, a car department employee for KCS, described the ballast in the railyard in frank terms: "The – walking conditions is – was horrible." He also recounted prior complaints he had made about Tracks 46 and 47. He answered, "No," when asked if anything was done as a result of KCS employee complaints. Rod Clark was asked about any prior complaints he made about the railyard, testifying: "Years ago, just told them about the footing and – and – and the slope of the – of the track." Casey Hall, a KCS safety manager, who performs industrial inspections, stated there were no regularly scheduled cleanups or regularly scheduled maintenance in the yard to secure and pack the ballast.

The FELA provides the exclusive remedy for a railroad employee injured due to his employer's negligence. *See Wabash R. Co. v. Hayes*, 234 U.S. 86, 89, 34 S. Ct. 729, 729, 58 L. Ed. 1226 (1914); *Broussard v. Union Pac. R. Co.*, 29,769 (La. App. 2 Cir. 08/28/97), 700 So. 2d 542, 544, *writ denied*, 1997-2414 (La. 12/12/97), 704 So. 2d 1202. The United States Supreme Court has directed that the FELA is to be liberally construed to further the remedial goals of Congress and includes a relaxed standard of causation. *Rogers v. Missouri Pac. R. Co.*, 352 U.S. 500, 506, 77 S. Ct. 443, 448, 1 L. Ed. 2d 493 (1957); *see Norfolk S. Ry. Co. v. Sorrell*, 549 U.S. 158, 171, 127 S. Ct. 799, 808, 166 L. Ed. 2d 638 (2007). Under the FELA, the question is whether "employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Rogers*, 352 U.S. at 506. "The burden of the employee is met, and the obligation of the employer to pay

12

damages arises, when there is proof, even though entirely circumstantial[.]" *Id*., 352 U.S. at 508.

We find Van Buren established sufficient evidence to defeat KCS' motion for summary judgment. The evidence was not merely "self-serving" testimony as was present in *Alex v. BNSF*, where the petitioner relied solely on his own testimony. *Alex*, p. 6, 103 So. 3d at 1184. We find Van Buren identified sufficient evidence to establish a genuine issue of material fact as to whether KCS acted negligently. Thus, summary judgment is not warranted at this time.

## CONCLUSION

For the foregoing reasons, we reverse the lower courts' grant of summary judgment in favor of KCS. We remand for further proceedings.

**REVERSED AND REMANDED.**